The plaintiff, *pro se.*

No counsel appeared for the defendants.

---

ENOS BRIGGS *vs.* BOSTON AND LOWELL RAILROAD COMPANY.

A carrier who receives goods to be carried not only over his own line, but over successive lines of transportation connected with it, and to be delivered at some distant point, acts, in the absence of special instructions from the owner to the succeeding carriers, as his forwarding agent, in giving directions to them as to the transportation of the goods; and in case of a mistake made by the first carrier in directing the goods, or in the bills, by reason of which they are sent to the wrong place, the last carrier has a lien upon them for the freight earned by him, and also for the sums paid by him for the freight from the commencement of the transportation.

A carrier who has a lien on goods for the freight earned by him in transporting them, and also for sums paid for freight earned by preceding carriers thereof, has no right to sell the goods to enforce the lien.

f a carrier who has a lien on goods for freight wrongfully sells them, he is liable to an action for the conversion; and the measure of damages is the market value of the goods, deducting the amount of the lien.

TORT for the conversion of sixty-seven barrels of flour. Upon agreed facts, which are stated in the opinion, judgment was rendered in the superior court for the plaintiff, for the amount received by the defendants upon the sale of the flour by them, deducting the sum claimed by them as the amount for which they had a lien on the flour, and the expenses of the sale; and the defendants appealed to this court.

*J. G. Abbott,* for the defendants. 1. The defendants are not liable in an action of tort, because they have been guilty of no wrong or negligence. The flour was delivered to them in the regular course of their business. Being common carriers, they were obliged to receive it and transport it to its destination. They used extraordinary care to find the owner. They would have been justified in putting it out of their depot. But it was about to spoil; and to save their own lien and protect the interest of the owner they adopted the only course which could be adopted, and sold it. To hold them liable would determine that act to be a legal wrong, which was required by common prudence and common honesty, and by which alone the owner could save any of the value of it. See *Sands* v. *Taylor,* 5 Johns. 404. 2. The Racine and Mississippi Railroad Company were the plaintiff's agents, and the plaintiff is responsible for their carelessness. The sale was no conversion. This was made necessary by the negligence of the plaintiff's agents. The proceeds of the sale can only be recovered in an action of contract.

*L. Child & L. M. Child,* for the plaintiff. The conveyance of the flour by the defendants and its subsequent sale are a conversion, unless they had such a lien upon it as would authorize the sale. There was no such lien, because the flour was not carried to its place of destination. *Robinson* v. *Baker,* 5 Cush. 137, and cases cited. The defendants cannot avoid their liability on the ground that the diversion of the flour from

its proper destination was solely on account of the negligence of the Racine and Mississippi Railroad Company, because the defendants made the sale for the benefit of all the transportation companies, including that company.

MERRICK, J. The plaintiff, who resides at Racine, in the State of Wisconsin, delivered the flour, the value of which he seeks to recover in this action, to the Racine and Mississippi Railroad Company, taking from their agents a receipt, in which they agreed to forward and deliver it to Franklin E. Foster, at Williamstown, in this state. By mistake of the agents of that company, the flour was erroneously directed or billed to Wilmington, where there is a freight station on the road of the defendants. It was carried by the Racine and Mississippi Company over their road, and at its eastern termination delivered to the carriers next in succession in the line and route from Racine to Wilmington. And it was thus transported by the successive carriers in that line and route in their vessels and cars respectively, according to the bills and directions under which it was forwarded from Racine, until it arrived in due time at Groton, the point of the commencement of the road of the defendants. And it was there received by them, they paying the freight earned by all the preceding carriers, and carried to Wilmington, where it was duly deposited in their freight depot. But Franklin E. Foster, to whom it was directed, did not reside or have any place of business at Wilmington, and the defendants were unable to find there any consignee who could be notified of its arrival, or to whom it could be delivered. The defendants' agents immediately instituted a diligent inquiry, but they could not ascertain where the consignee or any other person entitled to have possession of the flour was to be found, or could be notified. At the time of its arrival at Wilmington it was beginning to become sour, and would soon have greatly deteriorated in value. The defendants kept it on hand in store for about two months ; and at the expiration of that time, being still unable to find either the owner or the consignee, and it being out of their power to procure a warehouse in which they could store it for a longer time, they caused it to be sold at public auction,

Briggs *v.* Boston and Lowell Railroad Company.

and received the proceeds of the sale, which they have since retained in their possession.

Upon these facts, the plaintiff in the first place contends that as Williamstown was the place of destination of the flour under the directions which he gave to the Racine and Mississippi Railroad Company, and according to their agreement in the receipt given for it by them to him, the defendants had no right to receive the flour at Groton, and were guilty of the unlawful conversion of it to their own use by transporting it thence to Wilmington; although in such reception and transportation of it over their road they acted in good faith, and strictly in conformity to the bills and directions which were made and given by the agents of the Racine and Mississippi Company, and by which it was regularly accompanied over each and all the lines and routes of the successive carriers.

. The same person may be, and often is, not only a common carrier, but also the forwarding agent of the owner of the goods to be transported. Story on Bailm. §§ 502, 537. He must necessarily act in the latter capacity whenever he receives goods which are to be forwarded not only on his own line, but to some distant point beyond it on the line of the next carrier, or on that of the last of several successive carriers on the regular and usual route and course of transportation, to which they are to be carried and there delivered to the consignee. The owner generally does not and cannot always accompany them and give his personal directions to each one of the successive carriers. He therefore necessarily, in his own absence, devolves upon the carrier to whom he delivers the goods the duty and invests him with authority to give the requisite and proper directions to each successive carrier to whom, in due course of transportation, they shall be passed over for the purpose of being forwarded to the place of their ultimate destination. Otherwise they would never reach that place. For the first carrier can only transport the goods over his own portion of the line; and if he is not authorized to give the carrier with whose route his own connects directions in reference to their further transportation, they must stop at that point; for although in general every carrier is bound to

accept and forward all goods which are brought and tendered to him, yet he is not so bound unless he is duly and seasonably informed and advised of the place to which they are to be transported. Story on Bailm. § 532. *Judson* v. *Western Railroad*, 4 Allen, 520.

Hence it results by inevitable implication that when an owner of goods delivers them to a carrier to be transported over his route, and thence over the route of a succeeding carrier, or the routes of several successive carriers, he makes and constitutes the persons to whom he delivers them his forwarding agents, for whose acts in the execution of that agency he is himself responsible. And therefore if the several successive carriers carry the goods according to the directions which are given by the forwarding agents, they act under the authority of the owner, and cannot in any sense be considered as wrongdoers, although they are carried to a place to which he did not intend that they should be sent. And in such case the last carrier will be entitled to a lien upon the goods, not only for the freight earned by him on his own part of the route, but also for all the freight which has been accumulating from the commencement of the carriage until he receives them, which, according to a very convenient custom, which is now fully recognized and established as a proper and legal proceeding, he has paid to the preceding carriers. *Stevens* v. *Boston & Worcester Railroad*, 8 Gray, 266.

Applying these rules and principles to the facts developed in the present case, the conclusion is plain and inevitable. It is conceded by the plaintiff, and agreed by the parties, that the flour was carried by the Racine and Mississippi Railroad Company over their road, and was then delivered to the carrier with whose route their own connected, and was thence transported in strict compliance with and exactly according to the directions given by them and contained in the bills which they forwarded with and caused to accompany the flour over the whole route from Racine to Wilmington, by the several successive carriers, and among others by the defendants. The Racine and Mississippi Company were the duly constituted forwarding agents of the plaintiff; and as the defendants acted under their authority,

they rightfully received the flour at Groton and carried it to Wilmington. And having under that authority paid all the freight which had accumulated in the whole course of the conveyance, including that which had been charged by the forwarding agent, up to the time when they received the flour, they were, as soon as it was conveyed to and deposited in their own freight house, entitled to a lien thereon for the entire freight thus paid and earned. And they cannot, either by the transportation of it under such circumstances over their own road, or by the detention thereof for the purpose of enforcing their lien upon it, be held to have unlawfully converted it to their own use.

This conclusion does not at all conflict with the decision in the case of *Robinson* v. *Baker*, 5 Cush. 137, upon which the plaintiff, in support of his position, chiefly relies. For there is an essential difference between the facts in the present and those which appeared in that case. There it was shown that the plaintiff, the owner of a parcel of flour, delivered it at Black Rock, on board of one of their canal boats, to the Old Clinton Line Company, who gave for it bills of lading in duplicate, wherein they undertook and agreed to transport it to Albany and there deliver it to Witt, the agent of the Western Railroad. The plaintiff sent one of these bills of lading to Witt and the other to the consignee at Boston, thus reserving to himself the right and assuming the responsibility of giving to Witt the directions under which he was to act. The service which the Old Clinton Line Company was to render was exclusively in their capacity as common carriers. They had only to carry the flour to Albany and there deliver it to Witt. They had no other duty to perform ; no right to exercise any control over it for any other purpose. They were not, therefore, the forwarding agents of the plaintiff, nor invested by him with any authority to give directions as to the further transportation of the flour, or to make any other disposition of it than its delivery to Witt. Yet upon its arrival in Albany, in consequence of the inability of Witt immediately to receive and take charge of it, the agents of the Clinton Line Company, without right and in violation of their duty, shipped the flour to the city of New York, and

from there to Boston in the schooner Lady Suffolk, whose owners claimed a right to detain it under a lien upon it for the freight. But the court, upon the general principle that if a carrier, though innocently, receives goods from a wrongdoer without the consent of the owner, express or implied, he cannot detain them against the true owner until the freight or carriage is paid, determined that they had no lien upon the flour, and that their claim to that effect could not be sustained. But if they had been the forwarding agents of the owner he would have been responsible for their acts, and his consent to the diversion of the property from its intended route of transportation would have resulted by implication from their directions, and the respective carriers would then have become entitled to hold it under a lien to secure payment of the freight.

When the flour had been carried over their road to Wilmington and deposited at that place in their warehouse, the defendants had, as has been shown above, a lien upon it for all the freight which had been earned in its transportation from Racine. But this gave them only a right to detain it until they were paid; not to sell it to obtain the remuneration to which they were entitled. In the case of *Lickbarrow* v. *Mason*, 6 East. 21, it is said by the court that an owner may sell or dispose of his property as he pleases; but he who has a lien only on goods has no right to do so; he can only detain them until payment of the sum for which they are chargeable. And the rule which is now well established, that a party having a lien only, without a power of sale superadded by special agreement, cannot lawfully sell the chattel for his reimbursement, is as applicable to carriers as it is to all other persons having the like claim upon property in their possession. *Jones* v. *Pearle*, 1 Stra. 556. 2 Kent Com. (6th ed.) 642. *Doane* v. *Russell*, 3 Gray, 382. It is in distinct recognition of this principle that the legislature have provided that when the owner or consignee of fresh meat, and of certain other enumerated articles liable soon to perish for want of care, shall not pay for the transportation and take them away, common carriers who have a lien thereon for the freight may sell the same without any delay, and hold the proceeds,

Briggs *v.* Boston and Lowell Railroad Company.

subject to their own lawful charges, for the use of the owner. And such also is the provision in relation to trunks, parcels and passengers' effects left unclaimed at any passenger station of a railroad company for a period of six months after arrival and deposit therein. Gen. Sts. *c.* 80, §§ 1, 2, 5. This enumeration of particular cases in which the right to sell and dispose of certain goods and chattels transported is conferred upon common carriers operates, according to a familiar rule of law, as a denial or exclusion of their right in all other instances.

None of the provisions of the statute referred to extends to the case of flour transported in barrels as an article of merchandise. And therefore the defendants had no authority under the statute and no right at law to sell the flour which belonged to the plaintiff, although they had a valid and subsisting lien upon it, and were unable to find, after diligent inquiry, where the person to whom it ought to be delivered resided or had his place of business, and there was danger of its becoming worthless by longer detention of it in their warehouse. And consequently the sale which they made was an unlawful conversion of it to their own use, which renders them liable in an action of tort to the owner for its value, or rather for the value of all the right and interest which he at that time had in it, which is the merchantable value less the amount of the lien upon it. The plaintiff, therefore, may maintain this action, and is entitled to recover as damages the balance left after deducting from the sum which was the fair merchantable value of the flour at the time of the conversion the amount for which, upon the principles before stated, they had a lien upon it, with interest from the time of demand, or the date of the writ. And as the sale was unlawful, the expenses incurred in making it cannot be proved for the purpose of diminishing the damages which the plaintiff ought to recover.

Judgment is therefore to be rendered for him. Unless the parties agree upon the amount, the cause must be sent to an assessor, or submitted to a jury if either party requires it, to assess the damages.