CHARLES A. LOVELL, TRUSTEE, *vs.* THE HAMMOND COMPANY.

Third Judicial District, New Haven, June Term, 1895. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

The object of a bill of sale is to pass the title, not to define the purpose for which the title has passed. If a bill of sale is given in pursuance of a parol agreement by which the goods are to be restored on certain conditions, and the vendee takes possession under the bill of sale, he is bound by the terms of the parol agreement.

A creditor and debtor agreed that the former should prepare a three months' note for the amount of the debt, that the debtor should sign it, and procure a responsible indorser, and should give a bill of sale of his stock of goods to secure the performance of the agreement, such bill of sale to be void when the note was delivered. Thereupon the debtor gave the bill of sale, and procured a responsible indorser for a three months' note, but the creditor prepared a demand note, and refused to prepare a time note as agreed. The indorser refused to sign a demand note, and thereupon the creditor took the property conveyed by the bill of sale into his possession, together with the avails of such of it as had in the meantime been sold, and refused to give it up. In an action for damages, by the debtor's trustee in insolvency, it was *held* that such seizure by the creditor constituted an actionable conversion of the property.

The original complaint was for goods sold, and money loaned, to the defendant. *Held* that an amendment filed before trial, setting up the true cause of action, was properly allowed.

As the amended complaint was for a tort, no set-off of a debt due from the debtor to the defendant could be pleaded.

Under our insolvent laws all rights of action belonging to an insolvent debtor for injuries affecting his property, whether they be founded in contract or in tort, pass to the trustee in insolvency.

A judgment in an action for conversion of property, a part of which was a check indorsed in blank, included the face value of the check. There was no evidence as to its having been collected, nor as to its value. *Held* no error: as the check was a proper subject of an action for conversion, and if the damages allowed were excessive, that was a fact for the appellant to show and to have incorporated in the finding.

The property converted included goods and money. The plaintiff replevied the goods and recovered judgment for their possession, with damages and costs. *Held* that such recovery constituted no bar to an action for conversion of the money.

Money is not repleviable, whether coin or paper, after it has passed out of the hands of the original wrongdoer and become mingled with the general mass of the circulating currency of the community.

No matter can be barred by a former judgment, which could not have been a subject of recovery therein, though such matter may form a part of the transaction out of which the former action arose.

A witness cannot be asked whether a previous witness, who has testified to certain things, "had any ground" for so testifying.

[Argued June 4th—decided July 19th, 1895.]

ACTION to recover damages for the alleged conversion of money received from the sale of goods, brought originally before a justice of the peace, and thence by the defendant's appeal to the Court of Common Pleas for Fairfield County, and tried to the court, *Comley, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant for alleged errors in the rulings of the court.    *No error.*

The plaintiff was a trustee in insolvency, and sued for goods sold and delivered and money lent by F. L. Smith, the insolvent debtor, to the defendant.    The bill of particulars was for " cash collected of customers of F. L. Smith by defendant, $56.50."    Judgment was rendered for the plaintiff, and the defendant appealed to the Court of Common Pleas for Fairfield County, where the defendant filed a general denial, and also pleaded a set-off, for goods sold by the defendant to the insolvent debtor prior to his insolvency.

The plaintiff was subsequently allowed to amend his complaint, by substituting therefor a complaint setting up that the insolvent on the day before his assignment in insolvency, being a dealer in meats, and indebted to the defendant to the amount of $600, gave it a bill of sale of his whole stock of meats and of certain book accounts, under an oral agreement that it would hold said property solely as collateral security until Smith should procure a responsible indorser for his note in favor of the defendant for said sum ; that Smith thereupon procured such an indorser, but the defendant refused to accept such performance of the agreement, and wrongfully refused to re-deliver the property ; that meanwhile the defendant had sold some of the meats for $56.50, and received the money ; that Smith thereupon demanded this money, but the defendant refused to re-deliver it, and still wrongfully retained it ; and that the plaintiff, as such

trustee in insolvency, had also made demand for the money, but the defendant had refused to restore it, and wrongfully converted it to its own use.

Subsequently the court (*Curtis, J.*) granted a motion of the plaintiff to strike out the plea of set-off ; and a demurrer to the complaint having been filed and overruled, an answer was filed, containing a denial of most of the plaintiff's allegations, and setting up as a second defense the prior recovery, in another action in the Court of Common Pleas, brought by the plaintiff against the defendant " for a cause of action, which is a part of the same entire demand and cause of action, of which the cause of action set forth in this complaint in also a part," of a "judgment against this defendant upon said cause of action for $1.00 damages and costs, amounting in all to $61.35, and to retain possession of the property replevied." The second defense was traversed. The issues were found for the plaintiff (*Comley, J.*) and judgment rendered in his favor, from which the defendant took this appeal.

The following facts appeared by the finding of the Court of Common Pleas :—

Smith kept a meat market, and was called upon by Thomas McNamara, the manager of the defendant, to which he owed $700, for payment or security. They thereupon agreed that the defendant should prepare a three months' note for said sum, to be executed by Smith and a responsible indorser within two days, and accepted by the defendant in satisfaction of its claim. In violation of said agreement, another agent of the defendant went to the meat market, the following morning, in company with a constable, holding a writ of attachment, and before any levy was made, this agent agreed with Smith to send him such a note as had been promised on the preceding day, and abandon the contemplated attachment, on condition that said Smith would execute such a writing as would furnish the defendant with temporary security for said claim, until said Smith procured said indorser for such note ; and also agreed, that when a responsible person was procured to indorse said note, said writing should be returned to said Smith and be of no legal effect. To this

Smith assented, and thereupon said officer prepared a bill of sale, embracing all the stock, fixtures and utensils in said market, and without knowledge of the contents or legal effect of such a bill of sale, Smith executed the same and delivered it to the defendant. He was then informed that a man representing the defendant, would remain in the market so as to protect the security just taken against all other creditors, until said indorser upon said note was procured. The lease of said market was not assigned to the defendant. It was not agreed that said Hammond Company should give any sum for said property mentioned in said writing or give any credit therefor, or that the value of said property should be determined in any manner; and it never gave said Smith credit for said property or any part thereof, and there was no understanding which implied that a credit was to be given on said debt. Smith and his employees continued work at his market in the same manner as before, and the credit entries made in connection with the business were made on Smith's books as usual.

During the afternoon of said day, Smith saw Thomas McNamara concerning the note for three months that was to be given, and soon thereafter two persons offered by Smith as indorsers on said proposed note, appeared before Thomas McNamara and stated their willingness to indorse a note made by said Smith to said Company, for the full amount of said Company's claim, payable in three months, and were told by McNamara that he would ascertain if their indorsement of said note would be good, and if so found, would prepare and send over such a note to be so signed and indorsed. One of said proposed indorsers was a man of considerable property and perfectly responsible, and McNamara was so informed by parties whom he engaged to investigate their responsibility. Said McNamara on the day following the execution of said bill of sale, prepared and sent a note to said Smith to be signed by him and indorsed by the person proposed and found to be responsible, but it was expressed to be payable on demand. The note was signed by Smith without observing that it was a demand note, and then taken

by him to said proposed indorser who, upon reading the same and finding it a note upon demand instead of three months, refused to indorse it, as it was not such as had been agreed upon by the parties. He refused to indorse said note upon the sole ground that it was made payable on demand, but was willing and ready then and thereafter to indorse a note of the character previously agreed upon by the parties. Smith then requested the defendant to prepare or to accept a note made payable in three months from date as had been agreed upon, but it refused and asserted title to all the property described in said bill of sale, and to the proceeds of the sale made after the execution thereof, and for the conversion of which this suit was brought, and forthwith caused the goods described in said bill of sale to be removed from said market against the will of said Smith, and also took from the money drawer in said market the sum of $56.55 being the proceeds of said sales during said period following the execution of said writing, a portion of which amount consisted of a check which the constable required said Smith to indorse. No tender of a note was made by said Smith except in the manner as above stated. Said Smith on the following day made an assignment of all his property in possession, reversion, or remainder, wheresoever situated, and all debts, notes, and choses in action, from whomsoever due, except such property as was exempt by law, for the benefit of all his creditors, to the plaintiff, who duly qualified as such trustee, the court having jurisdiction thereof having adjudged said Smith to be insolvent. The plaintiff then demanded of the defendant the return of said chattels and said sum of money so taken away, but the defendant refused, and the plaintiff thereupon instituted a suit of replevin for the possession of the chattels taken away, and said suit was determined in favor of the plaintiff for the possession of said goods and for one dollar damages and costs.

No evidence was offered to show, nor was it claimed by the plaintiff or found by the court, that the defendant knew, when it took the bill of sale, that Smith was insolvent, or that he gave the bill of sale as a preference, in view of insolvency.

*John C. Chamberlain* and *John Cullinan*, for the appellant (defendant).

I. It does not appear that the defendant authorized the officer and his assistant to make any agreement that a note should be substituted in place of the property attached, and the defendant itself immediately repudiated any such understanding as soon as the debtor, Frederick L. Smith, attempted to claim it. *Lester* v. *Kinne*, 37 Conn., 9; Mechem on Agency, 285; *Matthews* v. *Hamilton*, 23 Ill., 470; *Dickinson* v. *Inhabitants of Conway*, 12 Allen, 491; *Craighead* v. *Peterson*, 72 N. Y., 280; *Spooner* v. *Thompson et Ux.*, 48 Vt., 257.

As these goods were confessedly placed in the hands of the defendant for the purpose of securing it for a debt due, and this money sought to be recovered in this action was obtained from the sale of such goods, while they were in its hands and before any attempt was made to substitute another security, the defendant would have a right to retain it for the purpose of paying its debt as far as it would go. *Rall* v. *Cook*, 77 Mich., 682. If this be true, clearly no tort was committed by the defendant in retaining said money.

II. If the defendant's action constituted a tort, a right of action thereon did not pass to the plaintiff, by Smith's assignment in insolvency. *Whitaker* v. *Gavit*, 18 Conn., 527. The assignment made no mention of the present cause of action, and it was not, therefore, included. *Stanley* v. *Dewhurst*, 2 Root, 52; *Bird* v. *Hempstead*, 3 Day, 273; *Gillette* v. *Fairchild*, 4 Denio, 82.

III. The plaintiff, with a full knowledge of all the facts, having elected to assert a contract, cannot, after two years' delay, disaffirm it. Nor can he now, more than a year having elapsed since suit was brought upon said contract and a judgment rendered in said cause, rescind the contract and sue in tort. *Bulkley* v. *Morgan*, 46 Conn., 393; *Kimball* v. *Cunningham*, 4 Mass., 502; *Ferguson* v. *Carrington*, 9 B. & C., 59; 2 Parsons on Contracts, 781 and note; *Crook* v. *First Nat. Bank of Baraboo*, 83 Wis., 43; *Crossman* v. *Universal Rubber Co.*, 127 N. Y., 37; *Neal* v. *Benton & Thompson*, 49 Mich., 55; *Terry* v. *Munger*, 121 N. Y., 167; *Fowler* v. *Bow-*

*ery Savings Bank*, 4 L. R. A., 145, note ; *Fields* v. *Bland*, 81
N. Y., 239. This law is not changed by the Practice Act,
which merely permits a change from contract to tort where
such a change is otherwise lawful, and where a suit in tort
could be subsequently brought upon the abandonment of the
action of contract.

IV. The defendant's plea in bar is based upon the fact that
the judgment in a former suit between these parties included,
or ought to have included, this money. If this be so the
replevin action should certainly have included all the goods
conveyed by the bill of sale, and the judgment in the replevin
suit should have been for the return of those goods that the
sheriff could find, and for the value of those that he could not
replevy. General Stat., § 1333.

*Stiles Judson, Jr.*, for the appellee (plaintiff).

I. That the plaintiff had the right, with the court's per-
mission, to change his cause of action from that of assumpsit
to one of tort, is too clear for question. Rules of Court,
Art. 6, § 1. Having thus presented an action for conversion
of the estate of the insolvent, the set-off filed by the defend-
ant was properly stricken from the pleadings in the cause.
For the defendant to contend for a moment that a set-off for
a debt is allowable in a tort action, is utterly untenable. A
" *right of set-off* " is purely statutory, and the statute must be
resorted to in order to determine what class of claims can
be made the basis of set-off. It was unknown at common
law. *Henry* v. *Butler*, 32 Conn., 141 ; Waterman on Set-off,
§§ 7, 125, 128, 138. By reference to § 1016, Gen. Stat., we
find that the right exists only where there are *mutual debts.*
*Harris* v. *Taylor*, 53 Conn., 501 ; *Pacific Iron Works* v. *New-
hall*, 35 id., 66 ; 22 Amer. & Eng. Ency. of Law, 245.

II. The plaintiff was not concluded by the fact that he had
already recovered, by replevin, the possession of the specific
chattels removed from the market by the defendant. The
identity of the property, for a conversion of which the plain-
tiff now seeks judgment, had, at the time of the replevin suit,
been lost, and its possession was, from the nature of the case,

incapable of being obtained under a writ of replevin. The statute authorizing writs of replevin, contemplates the recovery of the manual possession of specific goods or chattels, so described as to enable the officer serving the process to identify and take possession of them. Gen. Stat., §§ 1323, 1329.

It is very clear that the right of action for the defendant's tort passed by assignment to the trustee in insolvency. Otherwise an easy mode would be disclosed to a creditor for obtaining payment of his account at the expense of the other creditors. All such creditor has to do is to walk into the store of the insolvent merchant and help himself to the goods he may find.

III. The defendant's use of the written bill of sale constituted a fraud upon Smith. *Feltz* v. *Walker*, 49 Conn., 98; *Clark* v. *Tappin*, 32 id., 57; *Collins* v. *Tillou*, 26 id., 374; *Wainwright* v. *Talcott*, 60 id., 43; *Martin* v. *Righter*, 10 N. J. Eq., 523. He procured a responsible indorser willing to indorse a note in favor of defendant of the kind agreed upon, which defendant was to prepare and send to Smith. The moment defendant refused to prepare the note which, under the agreement, it was to prepare for Smith, and refused to accept such note as was made by Smith, its connection with this transaction became wrongful and fraudulent, and its refusal to restore the proceeds from sales of the pledged property, was an unlawful appropriation of the same. When it asserted absolute title to the property described in the writing, it was putting the writing to a grossly fraudulent use. The life of the bill of sale became extinguished by compliance with the condition of its delivery. *Kinney* v. *Whiton*, 44 Conn., 269; *Daggett* v. *Whitney*, 35 id., 378; *Hubbard* v. *Ensign*, 46 id., 585; *Arbeiter* v. *Day*, 39 id., 157.

BALDWIN, J. The real transaction, which was subject of this action, was a sale by the insolvent debtor of goods which he had pledged to the defendant, and its appropriation of the avails, after its right to the benefit of the pledge had ceased. The complaint erroneously described this as a sale

by the insolvent debtor to the defendant, and a loan of money. Under these circumstances, there was no error in the allowance of the amendment of the complaint. *Allen* v. *Woodruff*, 63 Conn., 369.

The substitution, by the amendment, of a cause of action founded on a tort for one founded on a contract, made it proper to grant the motion to strike out the plea of set-off. General Statutes, § 876, only applies when there is a "right of set-off," and by § 1016 such right is recognized only in actions brought for a recovery of a debt, and when there are mutual debts between the parties.

The demurrer was properly overruled. The complaint showed a sale by the defendant of part of certain goods of the insolvent held in pledge; a subsequent termination of its right to retain the benefit of the pledge, followed by a refusal, after due demand, to pay over to him the proceeds of the sale; an assignment in insolvency of all his estate, before the Court of Probate, resulting in an adjudication of insolvency, and the qualification of the plaintiff as trustee of said estate; another demand by the latter as such; and a conversion of the proceeds of the sale by the defendant to its own use.

The defendant contends that an assignment by an insolvent debtor of all his estate, without further words, does not comprehend any rights of action founded on tort; and it is not without authority for this position in decisions rendered before we had adopted any general system of insolvency procedure. *Stanly* v. *Duhurst*, 2 Root, 52; *Bird* v. *Clark*, 3 Day, 272. But the adjudication of insolvency and qualification of the trustee of the estate, which are averred, presuppose a valid assignment; and none can be valid, under our present statutes, which does not embrace all the property of the insolvent, (except such as is specially exempted,) including choses in action. General Statutes, §§ 501, 578. The trustee in insolvency may sue in his own name "upon any claim" belonging to the estate. General Statutes, § 533. For all claims against an insolvent debtor, which are founded in tort, his estate is expressly made liable. General Statutes,

§ 587. A fair construction of our insolvent laws, as they now exist, evinces the intention of the legislature that the insolvent estate should have the benefit of all rights of action belonging to the assigning debtor, for injuries affecting his property, whether they be founded in contract or tort. *Whitaker* v. *Gavit*, 18 Conn., 522; *Gillet* v. *Fairchild*, 4 Denio, 80.

The defendant insists that it had a right to take the money in question, and apply it as a partial payment of its claim against Smith, the insolvent debtor.

The finding shows that Smith and the defendant agreed on May 24th that it would prepare a three months' note for the amount of this indebtedness; that he would sign it and procure its indorsement by a responsible party on or before May 26th; and that this should be accepted by the defendant in satisfaction of its claim. On May 25th Smith procured an indorser for such a note, whom the defendant on inquiry ascertained to be a responsible party. The defendant thereupon prepared a note for him to indorse, and drew it so as to be payable on demand. The indorser objected to this change in the agreed terms, and Smith, on May 26th, requested the defendant to prepare another in the proper form, but it refused to do so. Meanwhile, early on May 25th, the defendant, in violation of the agreement, had sent an officer to attach Smith's stock in trade, by whom the latter had been induced to execute a bill of sale of his stock to the defendant, to serve as temporary security until the responsible indorser, provided for in the agreement, could be procured, and then to be returned to Smith and to be of no legal effect. On May 26th, after its refusal to prepare a three months' note, the defendant asserted title under this bill of sale to all that it embraced, and to the proceeds of such sales of goods in stock as had been made by Smith since its execution; took possession of a check and moneys representing such proceeds, and removed the remaining goods. Smith was required by the officer to indorse the check, and it was indorsed accordingly.

These acts plainly amounted to a ratification of the oral

agreement under which the bill of sale was given. When
the defendant claimed the benefit of that transaction, it could
not escape the burdens which were incident to it. The ob-
ject of the bill of sale was to pass the title, not to describe
the purpose for which title was passed. That might be shown
by parol. *Post* v. *Gilbert*, 44 Conn., 9, 18. The bill of sale,
therefore, became of no legal effect on May 26th, when Smith
tendered a responsible indorser, and was met by a refusal to
prepare the stipulated note. The subsequent removal of the
goods and appropriation of the check and cash were therefore
wrongful, and constituted a conversion, for which Smith had
a right of action when he filed his assignment in insolvency.

It is claimed that on the refusal of the defendant to pre-
pare the proper note, Smith might and should have prepared
one, himself, and tendered it, properly signed and indorsed.
If he had done so, it would not have discharged the debt.
There is no accord and satisfaction without actual perform-
ance. But the contract between the parties did not call
upon him for such a tender. They had agreed that the de-
fendant should prepare the note. This may have been impor-
tant to Smith as compelling it to make a definite statement
of the amount of its demand, or as relieving him from the
task of drafting an instrument of a kind with which he was
not familiar; but whether important or unimportant, it was
a part of the agreement by which their rights were deter-
mined, and Smith fulfilled his part of that agreement when
he tendered a responsible indorser within the stipulated time.

The defendant complains that the judgment appealed from
includes the face value of the check, although it is not found
that the check was ever paid. The check was a proper sub-
ject of an action for a conversion, and if the damages awarded
were excessive, it was for the appellant to show it, by request-
ing a finding that less was collected or collectible than the
amount for which it was drawn. *Tucker* v. *Jewett*, 32 Conn.,
563.

At the trial in the Court of Common Pleas, Smith was
called as a witness for the plaintiff, and testified that $30
was taken out of the money drawer in his market on the

Lovell, Trustee, v. Hammond Co.

night when the defendant removed the goods. It is made a reason of appeal that the court excluded an inquiry, subsequently put to a witness for the defense, as to whether Smith had any ground for making that statement. This ruling was obviously correct. One witness cannot be thus asked for his opinion as to the basis of another's testimony.

A single point remains for consideration, the determination of which is not wholly free from difficulty. The plaintiff had previously brought an action of replevin against the defendant, under which he replevied the stock of goods removed on May 26th, and obtained a judgment that he retain possession of them and recover $1 damages and costs. The defendant insists that as whatever property was removed on May 26th, including the cash and check, was taken under a claim of title derived from the bill of sale, such taking was a single and entire act, and constituted a single and entire cause of action, which was included and merged in that judgment, so that the truth of the second defense was in fact established by the finding, though the issue closed upon it has been in form found for the plaintiff by the trial court.

The action of replevin, with us, is purely a statutory one, and, while originally restricted within very narrow limits, may now be maintained for "any goods or chattels, in which the plaintiff has a general or special property, with a right to their immediate possession." General Statute, § 1323. Money is not repleviable, whether it be in the form of coin or paper, after it has passed out of the hands of the original wrong-doer and become mingled with the general mass of the circulating currency of the community. 2 Saunders on Pleading & Evidence, *760.

It does not appear, and we cannot presume, that either the money or the check remained in the defendant's possession, and in a condition to be identified, when the replevin suit was brought. They cannot, therefore, be considered as proper subjects of that action. If the money had been paid out, whoever took it had acquired an absolute title. If the check had been presented and honored, it belonged to the drawer.

The plaintiff, instead of bringing replevin, might have sued in a single action for a conversion of the goods, money and check; but he had also a right to seek the specific recovery of the property which he could follow, and damages for the conversion of that which he could not follow. So far as concerned his redress for a conversion of irrepleviable property, he was forced to bring an ordinary action *in personam*, and could not make claim for it in his statutory replevin suit. General Statutes, § 905. No matter can be barred by a former judgment, which was not, and could not have been made, a subject of recovery in the original action, though it may form a part of the transaction out of which that action arose. *Secor* v. *Sturgis*, 16 N. Y., 548, 559; *Stark* v. *Starr*, 94 U. S., 477. Where there is a choice of remedies, the election belongs to the plaintiff, and he is not obliged to be governed in making it by the convenience of the defendant.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.