ANDREW D. KUZEMKA *vs.* FRANK D. GREGORY.

Third Judicial District, New Haven, January Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, Js.

Argued January 23d—decided April 17th, 1929.

*Patrick B. O'Sullivan,* with whom, on the brief, was *Albert B. Gardella,* for the appellant (defendant).

*Alphonse C. Fasano,* with whom was *Jacob H. Bellin,* for the appellee (plaintiff).

HAINES, J.   The finding shows no substantial disagreement of the parties upon the following facts. On June 18th, 1927, the plaintiff purchased an automobile from the defendant for $1,210 and received credit for $25 then paid in cash and $300 for his old car which was delivered to the defendant. He then executed a conditional bill of sale in the form commonly used in this State providing for an additional cash payment to the defendant of $100 on July 1st, 1927, and "$785 to be paid in monthly payments of $45 each with six per cent interest," and the plaintiff was given possession of the new car, the title to remain in the defendant till the car was fully paid for. At the time of the execution of the bill of sale, the plaintiff signed and delivered to the defendant nineteen promissory notes prepared by the latter, due the fifteenth of each successive month, eighteen of these being for $45 each and the last for $59.58, making $869.58, which sum included $10 for drawing the bill of sale prepared by the defendant's bookkeeper. The plaintiff paid the $100 when due and the first two of the notes but made no further payments. He claimed at the trial that he

was unaware, when he signed the notes that they called for a larger total sum than was required by the bill of sale. On October 27th the plaintiff drove to Ansonia and parked his car at the curb and the defendant took it, in the absence of the plaintiff, who later in the day visited the defendant at the latter's garage and asked for the car, but the defendant refused to surrender it until a friend of the plaintiff left a bank book with the defendant as security for the balance due, and the car was then returned to the plaintiff. By agreement then made, plaintiff and defendant met at the National Bank of Ansonia October 31st, and the plaintiff offered the defendant $702.11 in cash and claimed that was the balance due on the purchase price of the car under the terms of sale. The defendant refused to accept this sum and demanded $768.04 which the plaintiff in turn refused to pay. It appears by the finding that the defendant himself offered this evidence: "The defendant presented to the plaintiff an itemized bill for $768 which represented an amount larger than the actual amount due from the plaintiff." The defendant claimed the plaintiff then said to him that he had decided to give up the car, whereupon the defendant took the car which was at the curb, and has since retained it. The plaintiff denies that he made that statement. The following day the plaintiff with two witnesses went to the defendant and again offered $702.11 but the defendant refused it and renewed his demand for $768.04. Again we note in the finding in the evidence offered by the defendant himself: "The actual amount due at the time the plaintiff tendered said sum of $702.11 was $712.00." Upon the trial, the plaintiff claimed to recover the $515 which he had paid with six per cent interest, and the jury awarded him $531.14 damages. The evidence of the defendant was that the plaintiff, an insurance agent, had driven the

car about five thousand miles and that its market value when retaken was but $875, showing a depreciation from the purchase price of $335.

During the argument of the appeal, counsel for the defendant voluntarily limited his claims to two: (1) that the court erred in the charge upon the question of damages, and (2) that at one point in the charge, and by certain remarks during the examination of the defendant, the court created a prejudice against the defendant in the minds of the jury.

While the defendant was on the witness stand, the court examined him at some length regarding this so-called interest charge which he included in his demand upon the plaintiff. Though an adequate explanation of the charge was not elicited, it is clear from the finding that the defendant admitted he had demanded a substantially larger sum than the original agreement embodied in the bill of sale, called for. This is confirmed by a simple calculation of the amount due under the terms of the bill of sale. During the examination the court asked the witness whether he knew there was a law in this State concerning usury, and repeated the question when a satisfactory answer was not forthcoming. In the charge reference was made to this feature of the case, and the overcharge was characterized as "a sum to which the defendant was obviously not entitled." This latter statement was clearly true and we need not comment on it, but the language used by the court in the examination of the defendant is less readily justified. It certainly tended to convince the jury that in the opinion of the court the defendant was a usurer. Calculating the sum due at the date of the demand, using the figures furnished by the bill of sale, and comparing the result with the amount which the defendant demanded, it will be seen that there is not such disparity as to lead inevitably

to the conclusion that it was an attempt at usury, and beyond the possibility of a mistake in the calculation. The defendant's attempted explanation on the stand, in response to the questions of the court, shows that the defendant himself did not know exactly how the figures were arrived at. The court would better have avoided a characterization of the matter. The tendency of its question was to show to the jury that it thought the defendant had done the plaintiff a wrong and acted unlawfully. While reasonable comment upon the evidence is within the discretion of the court and often of substantial and proper assistance to the jury, we cannot look upon this as justifiable under the circumstances. At the same time, we do not think the prejudice, if any was created in the minds of the jurors, was such as to work substantial injustice to the defendant in the consideration of the case by the jury. The facts were before them, as they were before the court, and it could hardly have influenced their verdict whether the overcharge was usurious or simply the result of a mistake. The fact was clear that there was more demanded of the plaintiff than he was legally required to pay, and they were entitled to draw their own inference, and doubtless did so. Under all the circumstances we do not feel that this action of the court, although improper, can fairly be held to have so prejudiced the defendant that it should be treated as reversible error. *Wood* v. *Holah,* 80 Conn. 314, 316, 68 Atl. 323.

As to the measure of damages, both the plaintiff and the court were in error. The jury were told that for the conversion of this automobile, the plaintiff was entitled to recover as damages "the value of his interest in the car" and that that interest was the $515 which he had paid on it, together with six per cent interest from the date of the conversion to the date

of the verdict. The jury evidently adopted this calculation and awarded the plaintiff $531.14, as damages.

The authoritative general rule recognized in numerous decisions in this State is that the measure of damages in trover is the value of the goods at the date of the conversion. *Curtis* v. *Ward,* 20 Conn. 204; *Lewis* v. *Morse,* 20 Conn. 211; *Seymour* v. *Ives,* 46 Conn. 109; *Sanford* v. *Peck,* 63 Conn. 486, 27 Atl. 1057; *Lovell* v. *Hammond Co.,* 66 Conn. 500, 510, 34 Atl. 511; 38 Cyc. p. 2088.

In determining this value it is generally sufficient to show the money value of the goods in the market at that time, since the cost of replacement ordinarily represents the owner's actual loss. The underlying purpose of the rule is to give full money compensation to the plaintiff for the loss he has suffered by the conversion, and where articles have a market value which can be established, the rule above referred to is held to accomplish that purpose for the reason given. Where an article does not, however, have a market value, or in the case of goods having a special and peculiar value to the owner, then full compensation requires that he recover "the value to him based on his actual money loss, all the circumstances and conditions considered, resulting from his being deprived of the property, not including, however, any sentimental or fanciful value he may for any reason place upon it." This rule was stated in *Barker* v. *Lewis Storage & Transfer Co.,* 78 Conn. 198, 200, 61 Atl. 363, where the articles converted were household goods and books, some of which had been presented to the owner, which the court held could not in any sense be said to have a "market value which is fairly indicative of their real value to their owner and of his loss by being deprived of them."

It cannot fairly be held that an automobile has such

special value to the owner. It is an article commonly bought and sold in the market, and if the owner be deprived of it, he can make good his loss by the purchase of another car of the same grade at the then market price for such automobiles. Moreover, the use which the plaintiff had enjoyed and the market depreciation from lapse of time, both of which are the normal results of ownership, are properly chargeable to the owner. This car thus had an actual value in the hands of the plaintiff at the time of the conversion of only $875 if the evidence offered in fact did determine its "market value."

In the present case, while the actual loss which the plaintiff suffered by the conversion of his car was, as we have indicated, the market value of the car plus interest thereon to the date of the verdict, he was not entitled to a judgment for the full sum thus arrived at, since the defendant had a claim against him for the balance due on the purchase price of the car with interest, calculated in accordance with the terms stated in the bill of sale. *Clark* v. *Clement,* 75 Vt. 417, 56 Atl. 94; *Smith* v. *Goff & Darling,* 29 R. I. 439, 72 Atl. 289; *Pierce* v. *Benjamin,* 31 Mass. (14 Pick.) 356; *Fowler* v. *Gilman,* 54 Mass. (13 Met.) 267; *Briggs* v. *Boston & Lowell Ry. Co.,* 88 Mass. (6 Allen) 246; *Jones* v. *Horn,* 51 Ark. 19, 9 S. W. 309; *Cocke* v. *Cross,* 57 Ark. 87, 29 S. W. 913; 38 Cyc. p. 2103.

The deduction of this sum from the plaintiff's loss caused by the conversion, will give the net sum for which the plaintiff is entitled to a judgment.

There is error and a new trial is ordered limited to the assessment of damages and the rendition of judgment in accordance with this opinion.

In this opinion the other judges concurred.