[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above-captioned case came before this court for trial on the merits. In his complaint, the plaintiff alleges that in 1993 he entrusted a 1983 Mercedes Benz motor vehicle to defendant Robert Altieri to sell at an auction and that Altieri instead converted the car to his own use, selling it to the other defendants and pocketing the proceeds.
In the first count of the amended complaint, the plaintiff alleges that Peter Prokopis bought the vehicle for $2,000 in cash and refused to return the vehicle to the plaintiff when asked to do so and converted it to his own use.
In Counts Two and Four of the amended complaint, the plaintiff alleges that defendant Altieri converted the vehicle to his own use and retained the proceeds of sale. In Count Six the CT Page 7280 plaintiff alleges that this defendant breached his contract of bailment. A default has entered against this defendant for failure to appear, and the trial constituted a hearing in damages as to him.
In Count Three the plaintiff claims that Peter Prokopis and Effie Prokopis knew or should have known the vehicle was stolen and received it and concealed it in violation of C.G.S. §52-564.
The remaining counts of the amended complaint are addressed to D A Motors Inc. In Count Seven the plaintiff alleges that D A, acting through Peter and Effie Prokopis, converted the automobile. In Count Eight the plaintiff alleges a violation of C.G.S. § 52-564, and in Count Nine he alleges violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), C.G.S. § 42-110.
Effie and Peter Prokopis have filed special defenses to the effect that the vehicle was purchased not by them but by D A Motors Inc., a corporation, that Altieri had apparent authority to sell the car on the plaintiff's behalf, and that all defendants acted in good faith.
The court finds the facts to be as follows.
At the time of the events at issue, the plaintiff was engaged in a business known as Classic Car Rentals, a sole proprietorship in which he bought and then leased out luxury cars. In 1985 he travelled to Germany and bought the 1983 Mercedes Benz that is the subject of this action. The car had high mileage. The car is a model produced for the German market.
The plaintiff modified the car to U.S. standards, however he conceded that the car was less valuable than a Mercedes vehicle of the same vintage manufactured for the U.S. market. The plaintiff leased the car out between 1985 and May 15, 1993, when the most recent lessee turned the car in at the conclusion of a two-year lease. The car, then ten years old, had damage to the front seats and high mileage.
The plaintiff decided to try to sell the vehicle at a car auction. In August 1993, he entrusted it to defendant Altieri, a mechanic who had performed some repairs to the car, instructing him to sell if he could get $6,500. The plaintiff signed the CT Page 7281 title to the vehicle in blank to enable Altieri to sell the vehicle at the auction.
After the date of the auction, the plaintiff called Altieri to ask whether the car had been sold. After some delay, he reached Altieri, who told him the car had not sold at auction. By unstated means, the plaintiff learned that the vehicle was at the West Haven premises where Effie and Peter Prokopis worked. On September 22, 1993, the plaintiff visited these defendants, told them the car was his and that Altieri had not been authorized to sell it, and demanded that the car be returned to him. He offered to pay the $2,000 that had been paid to Altieri for the vehicle.
Altieri had approached Peter Prokopis about buying the car on some undisclosed date shortly before September 18, 1993 and offered to sell him the Mercedes. Peter Prokopis did not inspect the car but offered to buy it for $3,000. Altieri refused that amount but called Prokopis on his beeper at 3:00 A.M. on September 18, 1993, again urging him to buy the Mercedes. Prokopis asked Altieri to come to his place of business at 10:00 A.M. that day. At that time, Peter Prokopis offered to pay $2,000 for the vehicle. He paid in cash, fifty dollars from his pocket and $1,950 from a drawer in his home from which Effie Prokopis obtained the money upon her husband's instruction to bring it to the place of business.
Altieri made out the bill of sale, which already bore the signature of the plaintiff. Altieri identified the purchaser as D A Motors Inc. Prokopis did not inquire why the name on the title was not Altieri's. Altieri gave Prokopis a receipt for the cash on a form headed "Bill of Sale." In that form, the seller is identified as Robert Altieri, and Altieri signed it and dated it September 18, 1993. Peter and Effie Prokopis knew Altieri to be a garage mechanic who worked at a garage not far from their place of business. Though they testified that they were experienced in attending car auctions and buying and selling numerous cars for their used car business, they had not bought any vehicle from Altieri before, nor did they know him to be engaged in the business of buying and selling cars.
After the defendants refused to return the car to the plaintiff, on September 23, 1993 he made a complaint at the West Haven police department.
The court finds that on both September 22, when he demanded CT Page 7282 the car, and September 23, when he made his complaint, the plaintiff was under the impression, probably created by Altieri, that the car had been sold for $4,000 and that the other defendants had made only partial payment to Altieri. After Prokopis produced the bill of sale indicating that the total price agreed to and paid was $2,000, the plaintiff, in the company of an investigating police officer, visited Altieri, who stated that he no longer had the cash but promised to pay the plaintiff $2,000 by October 8, 1993.
The defendants have not returned the Mercedes to the plaintiff.
Claims Against Peter and Effie Prokopis and D A Motors Inc.
1. Conversion
Conversion is the unlawful exercise of dominion over goods belonging to another who is entitled to their immediate possession. Falker v. Samperi, 190 Conn. 412, 419-20 (1983). A conversion is "some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm. The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm." id, citing Pollock's Law of Torts, p. 290; Gilbert v. Walker,64 Conn. 390, 394 (1894); Bruneau v. W. W. Transportation Co.,138 Conn. 179, 182 (1951); VanDerlip v. VanDerlip, 149 Conn. 285,288-89 (1962).
In Maroun v. Tarro, 35 Conn. App. 391, 396 (1994), the Connecticut Appellate Court has described, as "seminal" on the elements of this cause of action the case of Coleman v. Francis,102 Conn. 612 (1925):
 Colemanestablished that there are two general classes of conversion: (1) that in which possession of the allegedly converted goods is wrongful from the outset; and (2) that in which the conversion arises subsequent to an initial rightful possession.
In the case before this court, the defendants who now possess the Mercedes-Benz automobile claim that they acquired it rightfully and that there has been no conversion. Putting aside CT Page 7283 the suspicion that should have been raised by the fact that the car was offered to them by a person they knew did not own it, in a transaction marked by a middle-of-the-night phone call by a person in an obvious hurry to sell, one view of the transaction is that the defendants bought the car from a person with apparent authority to sell it and paid him $2,000. If that acquisition is viewed as giving rise to rightful possession, the issue is whether the retention of the car after the plaintiff revealed that he had not authorized the sale and offered to pay the defendants the $2,000 purchase price was a wrongful retention. This court finds that it was. The car belonged to the plaintiff, and he had not authorized its sale for the price received by Altieri. The plaintiff did not ratify Altieri's unauthorized transaction but immediately sought to rescind it and offered to make the defendants whole by paying them their purchase price.
The defendants assert that because Altieri had apparent authority to act as the plaintiff's agent, the plaintiff is bound by his action in selling the car even if that sale was unauthorized, such that their continued possession of the vehicle is not wrongful but pursuant to a completed sale.
The Restatement of Agency 2d at Sec. 166 provides that
 A person with notice of the limitation of an agent's authority cannot subject the principal to liability upon a transaction with the agent if he should know that the agent is acting improperly.
The defendants knew that Altieri did not own the car. Peter Prokopis testified that he had seen Altieri at the car auction, where Altieri had been seeking offers of $6,500 or more. That observation put Prokopis on notice that there was a limitation on Altieri's agency powers. Altieri's erratic and commercially bizarre behavior of calling in the middle of the night to offer to sell the car at a lower price was sufficient to put any reasonable person on notice that the agent was acting improperly. Prokopis knew Altieri to be a garage mechanic employed by others. He knew that Altieri did not own the car he was offering to sell for cash at any price that Prokopis would pay, and he knew that Altieri had previously declined his own offer to pay $3,000. The plaintiff was not bound by this transaction, which was clearly the act of an agent acting improperly and without authority.
Section 175 of the Restatement of Agency 2d even more closely CT Page 7284 governs the situation. That provision states that a principal who had entrusted an agent with a chattel to sell in a particular manner is not affected by a transaction of a different kind than that authorized unless the buyer "reasonably believes (the agent) to be authorized and . . . pays value."
Under the circumstances of Altieri's known identity and his conduct, the court finds that the defendants did not reasonably believe him to be authorized to sell the car for $2,000.
When the plaintiff expressly declined to ratify the unauthorized sale and offered to refund the $2,000, the defendants had no right to retain the fruits of the known unauthorized sale, and their continued possession of the vehicle constituted conversion.
The defendants claim that since D A Motors Inc. is the name that appears on the title to the vehicle, only that entity, and not the Prokopises, is liable for conversion. The purchase of the car was effectuated by Peter Prokopis. While he claimed to be acting only as the agent of D A Motors Inc., he paid part of the purchase price in cash directly from his own pocket, and he had his wife, Effie Prokopis bring the remainder from a drawer at their home. He testified that money from that drawer was used both for the business of D A Motors Inc. and for expenses of members of his household. After a recess in the proceedings, Mr. Prokopis amended his depiction of this intermingling of personal and corporate assets. The court did not find his corrective testimony credible; rather, the court finds that Peter Prokopis did not preserve the separation of corporate and personal transactions and assets. No memorialization of the transaction in corporate financial or other records was shown to exist, nor was there any record of reimbursement from the corporation to Prokopis for the cash he paid from his own pocket for the car.
Effie Prokopis testified that she was the secretary and treasurer of D A Motors Inc. and that the corporation had held no formal corporate meetings at which minutes were generated between its incorporation in June 1989 and April 1993. Where the assets of a corporation and its officers are commingled and the formalities of corporate existence are not observed, the corporate veil will be pierced and the principals, as alter egos, will be held accountable for the misdeeds of the corporation.Saphir v. Neustadt, 177 Conn. 191, 209 (1979); Zaist v. Olson,154 Conn. 563, 576 (1976). CT Page 7285
The court finds that Effie Prokopis, Peter Prokopis and D A Motors Inc. are all liable to the plaintiff for conversion of 1983 Mercedes Benz.
2. Liability for Theft Pursuant to C.G.S. § 52-564
The plaintiff alleges that the same three defendants are also liable to him for statutory theft, that is, for a violation of C.G.S. § 52-564. That statute provides that "[a]ny person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."
The plaintiff failed to prove that these defendants "concealed" the vehicle, a requisite of the statute he invokes. The evidence established that the defendants acknowledged their possession of the vehicle when the plaintiff asked them about it and that while they have continued to assert that they owned it, and have stored it in their garage, they have not been shown to have concealed the vehicle. Having failed to prove all elements of this statutory claim, the plaintiffs cannot prevail on it.
3. CUTPA Claim Against D A Motors Inc.
The plaintiff alleges that the actions of D A Motors Inc. in converting the Mercedes Benz and refusing to relinquish it after he offered to reimburse the purchase price constitutes a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), C.G.S. § 42-110a et seq.
In order to establish a CUTPA claim, a party must prove that the act or practice complained of constituted an unfair or deceptive act or practice in the conduct of any trade or commerce. Conn. Gen. Stat. § 42-110b.
The Connecticut Supreme Court has summarized the applicable criteria as follows:
 1. Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness;
CT Page 7286
 2. whether it is immoral, unethical, oppressive or unscrupulous;
 3. whether it causes substantial injury to consumers, competitors or other businessmen.[sic]
Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 591-92
1995), citing Conway v. Prestia, 191 Conn. 484, 492-93
(1983).
In assessing the third criterion, courts must determine whether the injury is substantial, whether it is outweighed by a countervailing benefit to consumers or competitors that the practice produces, and whether it is an injury that the consumers themselves could not reasonably have avoided. Williams Ford,Inc., 232 Conn. 592; McLaughlin Ford, Inc. v. Ford Motor Co.,192 Conn. 558, 569-79 (1984).
This court's finding that the retention of the vehicle constituted a conversion is sufficient to satisfy the first two requirements of the standard cited above. The court must determine, however, whether the injury was one that the plaintiff himself could not reasonably have avoided, a consideration required in Williams Ford, supra, 232 Conn. 592.
In Williams Ford, the plaintiff alleged that the defendant newspaper was engaging in an unfair trade practice by charging high rates for advertisements. Because the jury had found that the plaintiffs were ten percent contributorily negligent as to an accompanying claim for negligent misrepresentation, the Superior Court ruled that the plaintiffs had failed to prove that they "could not reasonably have avoided" any injury. Williams Ford,Inc. v. Hartford Courant Co., 232 Conn. 593. See Averitt, N., "The Meaning of `Unfair Acts or Practices' in Section 5 of the Federal Trade Commission Act;" 70 Geo. L. J. 225, 292 (1981).
The sale of the plaintiff's car by Altieri was possible only because the plaintiff had executed the title form in blank, providing, in effect, a blank check for the sale of the car by Altieri at any price.
The certificate of title form itself contains the following warning to owners of title: "Warning — do not sign until all information above has been filled in." (Ex. E). CT Page 7287
If the plaintiff had not signed the title certificate in blank, it is highly unlikely that the Prokopises and D A Motor Inc. would have completed the transaction, as they would have been unwilling to acquire title with the signature of a person with no connection to the ownership of the vehicle. While this court has found that the defendants could not reasonably have believed that Altieri was acting within the scope of his agency, the plaintiff's signature on the certificate of title gave them the ability to assert a contrary position.
Under the circumstances, the court finds that the injury suffered by the plaintiff — deprivation of his vehicle during the pendency of this action — was one that the plaintiff could have avoided, such that the third requirement for a CUTPA violation, as interpreted in Williams Ford Inc. v.Hartford Courant Co., supra is not proven.
Damages
The remaining issue with regard to the plaintiff's claims against the Prokopises and D A Motors Inc. is the amount of damages to be recovered upon the plaintiff's proof of conversion.
The measure of damages for converted goods is the value of the goods at the time of the conversion. Plikus v. Plikus,26 Conn. App. 174, 178 (1991); Kuzemka v. Gregory, 109 Conn. 117,122 (1929); and the only approach to damages that has been advocated by the plaintiff is the value of the vehicle at the time it was converted.
While the plaintiff has claimed treble damages, punitive damages and counsel fees, he has failed to establish the statutory claims under C.G.S. § 52-564 and CUTPA that would entitle him to such remedies.
The plaintiff claims that the value of the 1983 Mercedes Benz on September 18, 1993 was in excess of $10,000. The evidence established, however, that he sent the car to auction with instructions to sell it for $6,500. The plaintiff's willingness to sell the car for $6,500 is good evidence of its value at the time, and the court finds that having suffered damages in the amount of $6,500, he should recover that amount from the defendants, plus interest on that amount as compensation for deprivation of the use of that money. At the rate of ten percent CT Page 7288 per year, the rate set in C.G.S. § 37-3a, the court finds the interest due to be $1,404.
Claims Against Robert Altieri
The entry of the default establishes the claims stated in the complaint as to defendant Altieri. Since those allegations include a claim of theft pursuant to C.G.S. § 52-564, both conversion and theft are established as to the defendant, and the plaintiff is entitled to treble damages.
Conclusion
Judgment shall enter in favor of the plaintiff against defendants Peter Prokopis, Effie Prokopis and D A Motors Inc. in the amount of $7,904 plus interest at the rate of ten percent to the date of payment of the judgment plus court costs to be taxed upon application to the clerk.
Judgment shall enter in favor of the plaintiff against defendant Robert Altieri in the amount of $19,500, plus court costs.
Beverly J. Hodgson Judge of the Superior Court