WILLIAM H. HOXIE *vs.* THE NEW YORK, NEW HAVEN
AND HARTFORD RAILROAD COMPANY.

* Third Judicial District, New Haven, June Term, 1909.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

The law of Massachusetts as to the liability of a master to his servant, in
the absence of any averment to the contrary, is presumed, on de-
murrer, to be the same as that of Connecticut.

As to the merits and rights involved in actions, the law of the place
where they originated governs.

An action of tort lies for a wrong done in a foreign jurisdiction, and ac-
tionable there, if there be nothing in the public policy obtaining at
the forum to stand in the way of granting a remedy.

The power of Congress to regulate commerce with foreign nations and
among the several States and with the Indian tribes, is not only
subject to certain limitations specifically prescribed by the Con-
stitution of the United States, but others may exist by virtue of the
necessary implications from our dual system of political govern-
ment.

Nothing can be done by Congress to impair the right of each State to
maintain its own executive, legislative, and judicial magistracies,
so long as it preserves a republican form of government.

The common-law rule, that a servant cannot recover from his master for
injuries received from the negligence of a fellow-servant acting in
the same line of employment, is a part of that general American
common law resting upon considerations of right and justice that
have been generally accepted by the people of the United States.

Congress may alter the substantive law by prescribing a new rule of
right, as to transactions occurring in the course of commerce be-
tween the States, to be recognized and to control the disposition of
causes in all courts, State and Federal.

The Act of Congress of April 22d, 1908, is plainly intended to give an
action in the courts of the United States, and, if constitutional, is
well adapted to that purpose.

It is not to be presumed that Congress would, if it could, require the
courts of a State to enforce rights newly created by the laws of the
United States, which can only be done by following modes of pro-
cedure not permitted by the State law, and opposed to the public
policy which that law declares.

The right to engage in commerce between the States is not one created
by or under the Constitution of the United States, although its ex-

* Transferred from the second judicial district.

istence is impliedly guaranteed by Article 4, § 2, of that instrument as a privilege inherent in American citizenship.

A regulation, adopted by a State, which may incidentally affect commerce between the States is not on that account necessarily invalid.

Connecticut having so regulated the relation of master and servant that no action can be maintained in her courts by a servant against his master for personal injuries sustained within her territorial limits through the negligence of one of his fellow-servants, Congress cannot require such an action to be entertained by them.

If, after an Act of Congress vesting such jurisdiction in State courts, the legislative power of a State accepts for its courts such jurisdiction, its exercise would be justified by what was, in effect, the grant by the State of the right so to act.

In the absence of legislation by a State to the contrary, its courts may decline to accept such jurisdiction, and the objection may be taken by demurrer.

A judgment sustaining a demurrer will not be reversed, if the complaint was insufficient, although the decision was rested on a wrong ground.

An Act of Congress remotely affecting commerce between the States is not warranted by the Constitution, if that result is only to be secured by invading the settled limits of the sovereignty of the States with respect to their own internal police.

No part of the judicial power of the United States, when it is to be exercised in the form of an original plenary action, such as the Act in question purports to give, can be vested in any court not created by the United States.

The Act of April 22d, 1908, cannot be interpreted as referring only to negligence of employees while engaged in interstate commerce.

Its provision (§ 5) that any contract between an interstate carrier and any of its employees in such business, intended to enable the carrier to exempt itself from any liability created by the Act, shall to that extent be void, is in violation of the Fifth Amendment as tending to deprive the parties to such a contract of their liberty and property without due process of law.

The provision (§ 3) as to comparative negligence is also in violation of the Fifth Amendment.

It was beyond the power of Congress to create the remedy for injuries causing death, given by the Act.

These provisions cannot be separated from the residue of the Act, and their invalidity makes it wholly void.

Whether the presumption in favor of the constitutionality of a statute obtains where the objection is that it is an unwarranted invasion of the sovereignty of the State by the United States, quære.

If it does, any presumption in support of the Act of April 22d, 1908, has been met and overthrown by the considerations stated.

VOL. LXXXII—23

A statute substantially re-enacted in the words of an earlier one which
  has received a judicial construction, must be presumed to have
  been drafted with knowledge of the interpretation placed thereon.

Argued June 9th—decided July 20th, 1909.

ACTION by an inhabitant of Connecticut, brought to the
Superior Court in New London County, against the New
York, New Haven and Hartford Railroad Company, de-
scribed as a corporation organized under the laws of Con-
necticut, for an injury received by him while acting as a
train-hand on its railroad at Auburn in Massachusetts. The
complaint alleged an injury received while the plaintiff was
coupling cars in a train running from Norwich, Connect-
icut, to Worcester, Massachusetts, and due to the negli-
gence of a fellow-servant in control of another train of the
defendant, running between Hartford, Connecticut, and
Worcester, and claimed damages "under and by force of the
act of Congress approved April 22nd, 1908, relating to lia-
bility of common carriers by railroad engaged in commerce
between the States." A demurrer to the complaint was
sustained (*Ralph Wheeler, J.*) and judgment rendered for
the defendant. *No error.*

*Hadlai A. Hull,* with whom was *Frank L. McGuire,* for
the appellant (plaintiff).

*\*E. O. Harrison,* with whom was *Philip Doherty* and, on
the brief, *John T. Robinson* (United States Attorney for the
District of Connecticut), for the United States.

*Edward D. Robbins,* with whom was *Michael Kenealy,* for
the appellee (defendant).

BALDWIN, C. J. The plaintiff bases his action solely on
the Act of Congress of April 22d, 1908. His injury, having

* See note to the case of *Mondou* v. *New York, New Haven and
Hartford Railroad Co.,* post, p. 374.

been due to the negligence of a fellow-servant, could throw no liability on the defendant, had it occurred in this State, and were the question of liability to be determined by the common law of Connecticut. It did occur in Massachusetts, and he does not allege what the law of Massachusetts in respect to that question is. It is therefore to be presumed to be the same as that of this State. *Lockwood* v. *Crawford*, 18 Conn. 361, 370.

If the plaintiff has a right of action it must be based on the law affecting the relations of the parties at the time and place of the injury. As to the merits and rights involved in actions, the law of the place where they originated is to govern. *Wood* v. *Watkinson*, 17 Conn. 500, 510. This is true of tort actions; at least when a wrong having been done, actionable under the law of the place of its commission, there is nothing in the public policy obtaining at the forum to stand in the way of granting a remedy. 2 Wharton on Conflict of Laws (3d Ed.) § 478b. The law of Massachusetts in respect to any claims on the defendant growing out of the plaintiff's injury being presumably the same as that of Connecticut, there can be no recovery unless by virtue of the Act of Congress, which, if it affects proceedings in State courts, governs in each State alike.

Congress has what may be described in general terms as plenary power (Const., Art. I, § 8) "to regulate commerce with foreign Nations, and among the several States, and with the Indian Tribes." Elsewhere in the Constitution certain limitations are specifically prescribed, and others may exist by virtue of the necessary implications from the dual system of political government—*imperium in imperio*—which that instrument created.

By its provisions the sovereignty of each of the States is as carefully guarded as that of the United States. Each was to remain free to maintain its own executive, legislative, and judicial magistracies. Nothing could be done by Congress to impair this right, in any State, so long as it preserved a

republican form of government. The power to maintain a judicial department is one, incident to the inherent sovereignty of each State, "in respect to which the State is as independent of the general government as that government is independent of the States." As to that power, "the two governments are upon an equality." *The Collector* v. *Day*, 11 Wall. (U. S.) 113, 126.

The judicial power of the United States is, by the first section of their Constitution (Art. III), "vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish," and by the second section extends, among other things, "to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority." "The better opinion is that the second section was intended as a constitutional definition of the judicial power . . . which the Constitution intended to confine to courts created by Congress; in other words, that such power extends only to the trial and determination of 'cases' in courts of record, and that Congress is still at liberty to authorize the judicial officers of the several States to exercise such power as is ordinarily given to officers of courts not of record; such, for instance, as the power to take affidavits, to arrest and commit for trial offenders against the laws of the United States, to naturalize aliens, and to perform such other duties as may be regarded as incidental to the judicial power rather than a part of the judicial power itself." It was therefore held, in the case from which this observation has been quoted, that an Act of Congress, investing justices of the peace appointed under the laws of a State with authority to arrest and temporarily imprison deserters from a merchant vessel, was not objectionable on the ground that it gave them a judicial power belonging to the United States. *Robertson* v. *Baldwin*, 165 U. S. 275, 279, 280, 17 Sup. Ct. Rep. 326.

More recently the Supreme Court of the United States has stated that the first section of Article III grants "the entire judicial power" of the Nation; that the second section is neither "a limitation nor an enumeration," but "a definite declaration, a provision that the judicial power shall extend to—that is, shall include—the several matters particularly mentioned, leaving unrestricted the general grant of the entire judicial power"; and that "all the judicial power which the . . . Nation was capable of exercising" was vested in the tribunals described in the first section. *Kansas* v. *Colorado*, 206 U. S. 46, 82, 83, 27 Sup. Ct. Rep. 655. This power certainly included any authority which might be given them by Congress to take cognizance of judicial proceedings under statutes of the United States. "It is a sound principle, that in every well organized government the judicial power should be coextensive with the legislative, so far at least as private rights are to be enforced by judicial proceedings." *Kendall* v. *United States*, 12 Pet. (U. S.) 524, 618.

We find, then, under our American system of government, each State possessing legislative power over most subjects, and having courts that may exercise a commensurate judicial power, and the United States possessing legislative power over a few subjects, and having courts that may exercise a commensurate judicial power.

The Act of Congress now in question creates a statutory right of action. It is one not existing at common law, nor in chancery. It is one which, if warranted by the Constitution of the United States, may, under their general laws regulating the jurisdiction of the Circuit Courts of the United States (25 U. S. Stat. at Large, p. 433, Chap. 866), whenever damages exceeding $2,000 are claimed, be made the subject of judicial proceedings in the courts of the United States as a suit of a civil nature arising under the laws of the United States, without reference to the citizenship of the parties.

In view of these circumstances and conditions two questions present themselves at the threshold of the present case. The first is whether Congress intended by this Act to authorize the institution of an action under it in the courts of the States. The second is whether, if such were its intention, it had power to make it incumbent on the State courts to assume jurisdiction.

The main provisions of the Act are these:—

"Sec. 1. That every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

"Sec. 3. That in all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this Act to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: *Provided*, That no such employee who may be injured or killed shall be held to have been guilty of con-

tributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.

"Sec. 4. That in any action brought against any common carrier under or by virtue of any of the provisions of this Act to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.

"Sec. 5. That any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this Act, shall to that extent be void: *Provided,* That in any action brought against any such common carrier under or by virtue of any of the provisions of this Act, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought.

"Sec. 6. That no action shall be maintained under this Act unless commenced within two years, from the day the cause of action accrued."

"Sec. 8. That nothing in this Act shall be held to limit the duty or liability of common carriers or to impair the rights of their employees under any other Act or Acts of Congress." 35 U. S. Stats. at Large, p. 65, Chap. 149.

Was it the intention of Congress to authorize the institution of the statutory form of action, thus created, in the courts of the States?

At common law a servant cannot recover from his master for injuries received from the negligence of a fellow-servant, acting in the same line of employment. This is a part of

that general American common law, resting upon considerations of right and justice that have been generally accepted by the people of the United States, in administering which, in any State, the Federal courts have not deemed themselves bound by the judicial decisions of that State as to what, according to its common law, are the limits of that doctrine there. The Supreme Court of the United States has treated it as a rule of general jurisprudence, especially when invoked in cases arising in the course of commerce between States, and as justly supported by the principle that negligence of a servant resulting in an injury to a fellow-servant does not of itself prove any omission of care on the part of the master in his employment, and only such omission of care can justify holding the master responsible. *Baltimore & Ohio R. Co.* v. *Baugh*, 149 U. S. 368, 378, 386, 13 Sup. Ct. Rep. 914.

The common law had established the fellow-servant doctrine upon two main considerations: one, that above mentioned, viewing it as a rule of justice; and the other, viewing it as a rule of policy, in that it tended to make each servant more watchful of his fellows, and thus to promote the safety of all, as well as the efficiency of their common work.

Congress has now seen fit to give an action, where the common law denied it. It makes a demand legal, which the common law deemed impolitic. It is not lightly to be presumed that these provisions were intended to found original proceedings in the courts of the States, and to lay down for them new rules not only of right and policy but of procedure. *Carpenter* v. *Snelling*, 97 Mass. 452, 458.

Sections 4 and 6 of the Act of 1908 clearly indicate that the action is one to be brought under the statute.

The methods of procedure which are prescribed can all be easily pursued in the Federal courts. Some of them it might be difficult or even impossible to follow in the courts of a State. Others could only be observed there at the cost

of setting up in the same tribunal conflicting standards of right and policy and practice.

This may be illustrated by a reference to the existing jurisprudence and legislation of this State.

They allow a recovery for an injury resulting in death, whether instantaneous or otherwise, in an action surviving to or brought by the executor or administrator, of not exceeding $5,000, provided suit be instituted within one year; the damages to be distributed, after deducting the costs and expenses of suit, half to the husband or widow, and half to the lineal descendants of the decedent, *per stirpes;* but if there be no such descendants, the whole to go to the husband or widow, and if there be no husband or widow, to the heirs, according to the law regulating the distribution of intestate personal estate. General Statutes, § 399; Public Acts of 1903, p. 149, Chap. 193. If the Act of Congress of April 22d, 1908, applies to State courts, it would, in an action under the Act, by virtue of § 1, cut off grandchildren of the decedent in favor of his parents; and in the event of there being no surviving husband, widow, children, or parents, exclude the next of kin who were not dependent on the decedent. It would also remove any limitation of the damages recoverable in case of a fatal injury, and, by the terms of § 6, double the time within which suit could be brought.

By virtue of § 3, contributory negligence is to be no bar but, if proved, "the damages shall be diminished by the jury," in a certain proportion. Under our practice, suits of such a nature have been often tried, or heard in damages, before the court, without a jury. In such case, unless the statute could be interpreted to require the court to allow such a diminution, the purpose of this section would be frustrated.

Section 5 allows a set-off under certain circumstances. The action given is one founded on a tortious act or omission for which the defendant is made responsible. Set-off

is purely a matter of statute. It was unknown to the common law. Our statutes allow it in certain causes sounding in contract, but not in any sounding in tort. *Lovell* v. *Hammond Co.*, 66 Conn. 500, 508, 34 Atl. 511. If the Act of Congress can support an action brought under its provisions in a State court, it would force upon this State an extension of the privilege of set-off which our statutes have not thought it wise to permit.

It would also, by virtue of § 6, double the time within which a railroad company can be sued in our courts by one of its servants, for personal injuries received while in its employment.

Under General Statutes, § 1130, no action to recover damages for an injury to, or the death of, any person, caused by negligence, can be maintained against any railroad company, unless written notice, containing a general description of the injury and of the time, place, and cause of its occurrence, as nearly as the same can be ascertained, shall have been given to the defendant within four months after the neglect complained of, unless the action itself is commenced within that period. That such a notice has been given is a condition of recovery. *Peck* v. *Fair Haven & W. R. Co.*, 77 Conn. 161, 58 Atl. 757.

No similar provision is made in the Act of Congress now in question, and, if it applies to proceedings in State courts, no such notice in cases brought under it would seem to be necessary. It is not alleged, in the case at bar, that one was given, though the action was not brought until more than four months after the alleged date of the plaintiff's injury.

The question now under consideration is not whether Congress may not prescribe a new rule of right as to transactions occurring in the course of commerce between the States, to be recognized and to control the disposition of causes in all courts, State and Federal. Undoubtedly it can. *Schlemmer* v. *Buffalo, R. & P. Ry. Co.*, 205 U. S. 1,

27 Sup. Ct. Rep. 407. It would be a change in substantive law, and thus alter so far forth the law of the land.

But the Superior Court was called upon to say whether the plaintiff could, under the Act of Congress of 1908, insist on its entertaining an original action, which could only be brought, if at all, under that Act, and which could only be sustained by disregarding many of the requirements of our own law with respect both to pleadings and evidence.

Another reason for considering this legislation as conversant only with proceedings in the Federal courts is afforded by the provision (§ 7) that the term "common carrier," as used in the Act, "shall include the receiver or receivers or other persons or corporations charged with the duty of the management and operation of the business of a common carrier." By this a direct action is unconditionally given on the statute against a receiver.

Receivers stand for the court which appoints them. To sue them without leave of that court is contrary to the rules of chancery practice. By an Act of Congress passed in 1887 (24 U. S. Stat. at Large, p. 554, § 3), every receiver appointed by any court of the United States may be sued without its previous leave. The two Acts of 1908 and 1887, so far as they apply to Federal courts, are in this respect in entire harmony. But if the Act of 1908 were to be construed as warranting an action in a State court, against a receiver appointed by a State court, it would set up a new rule of practice for that State, and attack the dignity of its judicial department.

We have, then, a statute plainly intended to give an action in the courts of the United States and—assuming that it is not unconstitutional—well adapted to that purpose. It is a statute not expressly purporting to give an action in a court of a State, and which, in this State at least, is not in harmony with our system of administrative justice. If it gives such an action, it can only be on the ground that as

its terms are general, and do not exclude State courts, a right to sue in them is implied.

Undoubtedly the courts of every State and of the United States together constitute, in a certain sense, one judicial system for the enforcement of legal rights; but it is not to be presumed that Congress would (if it could) require those of a State to enforce rights newly created by the laws of the United States, which can only be enforced by following modes of procedure not permitted by the State law, and opposed to the public policy which that law declares. *Claflin* v. *Houseman*, 93 U. S. 130, 136. Nothing short of express provisions or necessary implications in the language of an Act of Congress could suffice to force upon a State court the exercise of a jurisdiction so incompatible with the legislation and practice which constitute its ordinary and natural rules of action.

It is true that under the present statutes of the United States no action under the Act of 1908 would lie in a court of the United States unless the damages claimed exceeded $2,000. Congress may, however, well be deemed to have had in mind the power of the plaintiff to claim what damages he pleases, and the rule that the sum named determines the jurisdiction.

But if Congress intended to give an action under the Act of April 22d, 1908, in the courts of the States, as well as in those of the United States, it is our opinion that the Superior Court was justified in sustaining the demurrer.

The right to engage in commerce between the States is not a right created by or under the Constitution of the United States. It existed long before that Constitution was adopted. It was expressly guaranteed to the free inhabitants of each State by the Articles of Confederation (Art. IV) and impliedly guaranteed by Art. IV, § 2, of the Constitution of the United States as a privilege inherent in American citizenship. *Slaughter House Cases*, 16 Wall. (U. S.) 36, 75; *Gibbons* v. *Ogden*, 9 Wheat. (U. S.) 1, 211;

*Crandall* v. *Nevada,* 6 Wall. (U. S.) 35; *Lottery Case,* 188 U. S. 321, 362, 23 Sup. Ct. Rep. 321; *Employers Liability Cases,* 207 U. S. 463, 502, 28 Sup. Ct. Rep. 141.

The reserved powers of the States leave them charged with the sole duty and power of preserving public order and the security of persons and property within their territorial limits, except so far as, by or under the Constitution of the United States, it may be otherwise provided. A like duty and power exist with reference to the regulation of the private relations of employer and employee, and in general to the duties of common carriers. That a regulation so adopted by a State may incidentally affect commerce between the States does not render it invalid. *Hennington* v. *Georgia,* 163 U. S. 299, 317, 16 Sup. Ct. Rep. 1086; *New York, N. H. & H. R. Co.* v. *New York,* 165 U. S. 628, 631, 17 Sup. Ct. Rep. 418; *Chicago, M. & St. P. Ry. Co.* v. *Solan,* 169 U. S. 133, 137, 18 Sup. Ct. Rep. 289; *Missouri, K. & T. Ry. Co.* v. *Haber,* 169 U. S. 613, 635, 18 Sup. Ct. Rep. 488.

The State of Connecticut has under her laws, written and unwritten, so regulated the relations of employer and employee that no action can be maintained in her courts by a servant against his master for personal injuries sustained within her territorial limits through the negligence of one of his fellow-servants, nor for such injuries sustained through the negligence of the master, combined with that of the plaintiff himself, when the latter's negligence essentially contributed to the result, whether it were or were not as great as the master's.

The servant of a common carrier falls within these rules. This is not because of the nature of his master's business. They apply to every servant and every master.

If it be assumed that Congress has power to prescribe a different rule for accidents occurring in or outside of Connecticut in the course of running a railroad train between States, and to create a new statutory action for its enforcement cognizable by the courts of the United States, it can-

not, in our opinion, require such an action to be entertained by the courts of this State.

It would open a door to serious miscarriages of justice through confusing our juries, if one rule of procedure were to be prescribed in one class of suits against an employer, and another, diametrically opposed to it, in another class of them. The same jurors might be instructed in one case that negligence on the part of the plaintiff constituted no defense, but might be considered in mitigation of damages, and in the next that he could not recover at all unless he proved affirmatively that he met his injury when himself in the exercise of due care. They might be instructed in one case, that a set-off was allowable, and in the next, under contractual conditions precisely similar, that a set-off was not allowable.

It would also be to compel courts established by a sovereign power, and maintained at its expense for the enforcement of what it deemed justice, to enforce what it deemed injustice.

If Congress may thus change the common law relations of master and servant by giving a new form and cause of action in the courts of the United States, it does not follow that they can give a servant a right to such a remedy in those of States where these relations remain unaltered.

The Act of 1908, furthermore, if constitutional, enlarges the judicial power of the courts of the United States by giving in a certain class of causes a judicial remedy where none previously existed. This remedy is by a plenary action. If we understand correctly the position of the Supreme Court of the United States, no part of the judicial power of the United States, when it is to be exercised in the form of an original plenary action, can be vested in any court not created by the United States. In *Martin* v. *Hunter's Lessee,* 1 Wheat. (U. S.) 304, 330, it was stated that "Congress cannot vest any portion of the judical power of the United States, except in courts ordained and estab-

lished by itself." *Houston* v. *Moore*, 5 Wheat. (U. S.) 1, 27, which re-affirmed this position, was the subject of consideration in *Claflin* v. *Houseman*, 93 U. S. 130, 141, where it was held to have decided "not that Congress could confer jurisdiction upon the State courts, but that these courts might exercise jurisdiction on cases authorized by the laws of the State, and not prohibited by the exclusive jurisdiction of the Federal courts." *Robertson* v. *Baldwin*, 165 U. S. 275, 279, 17 Sup. Ct. Rep. 326, in words previously quoted, pronounces it as the better opinion that the Constitution was intended to confine to courts created by Congress the trial and determination of cases in courts of record falling within the grant of Federal judicial power.

This case does not present the question which might arise if the State of Connecticut by appropriate legislation had accepted for its courts the jurisdiction which the plaintiff invokes. If he could then maintain his suit, it would be because the State had in effect granted him the right to sue. *Ex parte Knowles*, 5 Cal. 300.

But if Congress may authorize a State court to entertain a plenary action created by a law of the United States, it would not follow that the jurisdiction must be assumed. The judicial duty of the courts of a State is fulfilled when they administer justice as its laws require. *Stephens, Petitioner*, 4 Gray (Mass.) 559, 562. If they may, when not prohibited by the statutes of their State, accept jurisdiction of statutory actions given by Act of Congress, they are also free to decline it; and the objection may be taken by demurrer. *Ely* v. *Peck*, 7 Conn. 239.

The grounds of the demurrer filed in the case at bar, while challenging the constitutionality of the Act of 1908, do not specifically raise the point now under discussion. It was, however, manifest on the face of the record, and, the judgment that the complaint was insufficient being right, it is immaterial that this particular objection was not distinctly made. *Thresher* v. *Stonington Savings Bank*, 68

Conn. 201, 205, 36 Atl. 38; *British American Ins. Co.* v. *Wilson*, 77 Conn. 559, 564, 60 Atl. 293.

Thus far we have refrained from discussing the constitutionality of the Act, except as to the single objection that, if it can be considered as intended to give an action in the courts of the States, it goes in that respect beyond the powers of Congress. In our opinion it also transcends them otherwise.

By § 1, the rule of *respondeat superior* is extended so as to make the common carrier by railroad between States responsible for an injury received by one of its servants in the course of his employment in interstate commerce, due in whole or part to the negligence of any of its officers, agents, or employees, whether they are or are not, at the time, themselves employed in such commerce.

An interstate carrier is generally also an intrastate carrier. It may have a considerable force of officers, agents, or employees, engaged in business that is wholly local. Does the power to regulate commerce between the States go so far as to warrant imposing on a carrier responsibility to a servant engaged in that business for the consequences of the negligence of another of its servants, occurring when the latter was not engaged in it, nor indeed in any business for the common employer? If a freight clerk, whose duties are confined to keeping tally of goods consigned from one point to another in the same State, in an office devoted to that purpose, should carelessly discharge a rifle, a bullet from which should hit a brakeman on an interstate train, a mile away, we are of opinion that it could not fairly be deemed a regulation of interstate commerce to hold the common employer responsible for the injury. *Employers Liability Cases*, 207 U. S. 463, 498, 28 Sup. Ct. Rep. 141. Nor would it be such a regulation, to make an interstate railroad company liable to a train-hand who, while going to work, was accidentally struck by an automobile directed by one of its vice-presidents or land agents while on a pleasure drive.

It is to be observed in this connection, also, that the Act is not concerned solely with cases of injuries to train-hands. It includes those to any person who is employed by the carrier in interstate commerce, and gives an action to his "or her" personal representative. A waitress employed by an interstate railroad in a railroad restaurant, where local custom does not exist or is not served, could recover on the statute for an injury received from the negligence of a man hired by the carrier for some purpose purely of a local character.

Except so far as the Act is a regulation of commerce between the States, its enactment was beyond the power of Congress. That it remotely affects such commerce is not sufficient, if that result is only to be secured by invading the settled limits of the sovereignty of the States with respect to their own internal police. *Williams* v. *Fears,* 179 U. S. 270, 278, 21 Sup. Ct. Rep. 128; *Keller* v. *United States,* 213 U. S. 138, 29 Sup. Ct. Rep. 470. The Act cannot be interpreted as referring only to negligence of employees while engaged in interstate commerce. It substantially re-enacts in this particular the words of the previous Employers Liability Act of 1906 (34 U. S. Stat. at Large, p. 232), and must be presumed to have been drafted with knowledge of the judicial construction which those words had received. *Employers Liability Cases,* 207 U. S. 463, 500, 28 Sup. Ct. Rep. 141.

The provision of § 5, that any contract between an interstate carrier and any of its employees in such business, intended to enable it to exempt itself from any liability created by the Act, "shall to that extent be void," is, in our opinion, in violation of the Fifth Amendment to the Constitution of the United States, as tending to deprive the parties to such a contract of their liberty and property without due process of law. The contract may be one made on a full consideration by an employee, or one seeking to become such, who is fully capable of understanding its

meaning and effect. He may be the general manager of a great railroad system, the damages resulting from the loss of whose life might justly be estimated at a vast sum. His salary may have been agreed on in view of this provision of exemption. To avoid that, and yet let the other provisions of the contract stand, would necessarily work rank injustice. It would virtually deprive the carrier of its property, and—under the construction of that phrase adopted by the courts of the United States—do so without due process of law. *Adair* v. *United States*, 208 U. S. 161, 172, 28 Sup. Ct. Rep. 277.

The statute cannot be regarded in this respect as one made for the protection of an ignorant and improvident class, such as the Acts regarding shipping articles. The employees of a railroad company are, in general, men of more than ordinary intelligence. The dangerous nature of the business requires and secures this. It cannot be regarded as one made for the protection of train-hands, for it covers every kind of employees. It denies them one and all that liberty of contract which the Constitution of the United States secures to every person within their jurisdiction.

The Act, it is to be remembered, does not confine itself to avoiding a contractual provision for exemption from liability for the negligence of the carrier's servants while engaged in carrying on the work of transportation. It avoids a provision for exemption from liability for the negligence of its servants, while not engaged in carrying on the work of transportation, and even while not engaged in the line of their service at all.

The provisions of § 3 allow and apparently require the recovery of some damages, although the plaintiff's negligence was gross and that of his fellow employee slight. If, as aptly suggested by the defendant's counsel, an engineer, hearing but negligently disregarding an automatic warning bell, should derail his train at a switch negligently left open by the man in charge, and the latter be struck by an over-

turned car, each could recover from the common employer for any personal injury, although it came from a plain violation of known rules, and the employer's loss from the consequent destruction of life and property were enormous.

The doctrine of comparative negligence, as it has been generally understood where it obtains, is that slight negligence shall not defeat an action against one guilty of gross negligence. In the form assumed by the Act of 1908, it sanctions a recovery where the plaintiff has been guilty of gross negligence and the defendant of none at all. To hold the carrier liable in such case because of the imputed negligence of any officer, agent, or employee, whether the latter be at the time engaged in interstate commerce or not, seems to us not an appropriate or legitimate regulation of commerce between the States, but rather an arbitrary and unlawful deprivation of property, within the meaning of the Fifth Amendment to the Constitution of the United States.

It serves to confirm this conclusion that the liability thrown upon the carrier by § 1 is not confined to damages resulting solely from the negligence of its officers, agents, or employees. It is fixed and complete if such negligence contributes in any degree to the injury, although it be partly due to the act or omission of a mere stranger. There can be no contribution between wrongdoers. If, therefore, the carrier in such a case could be held under the statute, his property would be taken to pay for a wrong mainly, perhaps, done by one with whom it stood in no contractual relations and who, except for this particular act, had no connection with commerce between the States.

The Act gives a remedy for injuries causing death, without limitation of the damages recoverable, in favor of the executor or administrator; the fund to be distributed in a manner which is inconsistent with the law of every State with respect to the devolution of the estate of a deceased person. In our opinion, Congress cannot create such a right of action in favor of personal representatives of an in-

habitant of a State. They are appointed, or their appointment is approved, by authority of the State, exercised through some court to which they are accountable. If the damages recoverable are to be treated as representing estate left by the decedent, it is for the State of his domicil to regulate their distribution. If they are to be treated as a fund created by this Act, which does not represent anything that ever belonged to the decedent, it was, in our opinion, not within the competency of Congress thus to bring into existence a new duty of executors or administrators to collect, and a new duty of masters to pay, what the decedent never owned. Such legislation falls solely within the sphere of the States.

It does not appear that Congress would have enacted this measure without the provisions on which we have thus commented. These parts of the statute cannot be severed from the rest, and their invalidity renders it wholly void, so far as it applies to the case before us. *Employers Liability Cases*, 207 U. S. 463, 501, 28 Sup. Ct. Rep. 141.

A statute enacted in a jurisdiction where a written constitution obtains, is prima facie presumed by its courts, if its validity be questioned before them, to be in accord with that constitution. Whether such a presumption exists, either in a State court or in those of the United States, in favor of an Act of Congress which, if valid, reduces the limits within which the sovereignty of the States has for more than a century been freely exercised, and especially of this Act, which by its title does not purport to be a regulation of interstate or foreign commerce, but simply to relate "to the liability of common carriers by railroad to their employees in certain cases," we need not inquire. If the statute under review has the support of such a presumption, that support is overthrown by the considerations previously stated.

To sum up our conclusions, the judgment of the Superior Court was right on each of the following grounds:—

1. Congress did not intend by the Act of April 22d, 1908, to authorize the institution of an action under it in the courts of the States.

2. It had no power to make it incumbent on the State courts to assume jurisdiction of such an action.

3. The issues before the Superior Court involved the consideration of these points, which justified, of themselves, the dismissal of the plaintiff's action; but further,

4. The Act, so far as it concerns this cause, is wholly void by reason of certain of its provisions which cannot be separated from the rest.

There is no error.

In this opinion the other judges concurred.