STATE OF CONNECTICUT EX REL. J. WALTER MADIGAN ET ALS. *v.* COUNTY COMMISSIONERS OF FAIRFIELD COUNTY ET ALS.

MALTBIE, C. J., HINMAN, AVERY, JENNINGS and DALY, JS.

[1] Argued August 30th—decided September 13th, 1938.

*Daniel E. Ryan,* with whom was *Warren F. Cressy,* for the appellants (plaintiffs).

*Bernard A. Nevas,* with whom, on the brief, was *Leo Nevas,* for the appellees (defendants County Commissioners and County Treasurer).

*Harry Schwartz,* for the appellee (defendant Town and City of Bridgeport).

MALTBIE, C. J.   This action is brought by certain resident taxpayers of the town of Stamford and neighboring towns in the county of Fairfield, seeking mandamus to compel the county commissioners and treasurer of the county to purchase, alter and furnish a certain building in Stamford for use as a county building and court house and to issue bonds for that purpose.   No question is raised as to the right of the plaintiffs to maintain the action.   On February 5th, 1937, a bank which owns the building made an offer to the county commissioners to sell it to the county for $90,000.   The Legislature, on April 27th, 1937, adopted an amendment to § 5330 of the General Statutes which, among other changes, provided that sessions of the Superior Court should be held at Stamford whenever suitable quarters were provided with-

[1] The record and briefs will be found in volume A-126, of the *Records and Briefs.*   Reporter.

out expense to the county. General Statutes, 1937 Supplement, § 825d. Later in the session a special law was enacted, approved June 11th, 1937, which provided that at a regular or special meeting of the senators and representatives for Fairfield County duly warned and held for the purpose, the county might issue bonds to an amount not exceeding $95,000 for the purpose of defraying expenses and indebtedness incurred by the county in acquiring land and buildings in Stamford for a county building and court house, and that the county commissioners and treasurer of the county should determine the date of the bonds and of the interest payments thereon, their form and the place of payment of principal and interest, and should issue the bonds at such time or times and in such amounts as they should deem necessary, and provide for the sale thereof. Special Laws, 1937, p. 818.

On June 2d, 1937, previous to the approval of this law, at a meeting of the senators and representatives from Fairfield County a special committee was appointed to report at an adjourned meeting upon the advisability of erecting an addition to the county court house at Bridgeport and erecting a suitable building at Stamford for sessions of the Superior Court and Court of Common Pleas. Apparently no adjourned meeting was held but the county commissioners of the county called a special meeting of the senators and representatives in the county, to be held on August 2d, 1937, to act upon the two matters referred to the special committee. At that meeting a vote was passed as follows: "RESOLVED: That the report of the Sub-Committee appointed by the County Meeting held at Hartford, Connecticut, on June 2d, 1937, recommending the purchasing, alteration and furnishing the building known as The Masonic Temple at Stamford,

at a cost not to exceed $132,500, (the cost of said land and building not to exceed $90,000) be adopted, and that the County Commissioners be authorized to provide for the financing of the same by bond issue not exceeding $95,000, as authorized under the laws of the State of Connecticut, and by a tax to be levied to provide the balance of said sum, said tax to be payable on October 1, 1937." Subsequently in pursuance of a vote of the meeting the chairman appointed a commission to supervise the alteration in the building. On August 30th the tax commissioner of the State made a computation in which he purported to apportion among the several towns of the county any tax which may have been validly laid at the meeting of August 2d, 1937, the total so apportioned being $37,-500, and thereupon notice was given to the selectmen of the several towns for the payment of the amount apportioned to each. Certain towns in the county paid the tax but others have never done so. The county commissioners have not reported the neglect of the latter towns to the clerk of the county as required by law and no execution has been issued for the collection of the tax. The county commissioners have never determined that public necessity requires a county building at Stamford nor have they ever accepted the offer of the bank to sell the property or taken any action to acquire it for county use. They and the county treasurer have not issued the bonds as authorized in the vote of the county meeting. The bank advised the commissioners that unless its offer to sell the building was accepted on or before the first day of October, 1938, the building would be demolished.

The basic question is whether by reason of the acts of the Legislature and the votes at the meeting of the senators and representatives from the county the de-

fendants are under a duty to proceed with the steps necessary for the purchase, alteration and equipment of the building at Stamford. The trial court reached its conclusion denying a writ upon the ground that it is the county commissioners of the county who are entrusted with the power to determine whether a new building for county and court house purposes should be provided in the county, largely resting this conclusion upon §§ 201, 5065 and 5072 of the General Statutes. The first of these, so far as pertinent, provides that the county commissioners in each county shall manage and take care of all the property belonging to the county and may sell or purchase real estate in the name and behalf of the county. Section 5065 states that any county may take any land which its commissioners deem necessary for the site, or for an addition to the site, of any county building, and § 5072 establishes the procedure by which this shall be done, providing that the county commissioners in the name of the county may prefer a petition to the Superior Court for the purpose. These provisions fall far short of giving authority to the commissioners to determine whether or not a new county building or court house, with the necessarily heavy expense entailed, should be constructed; rather they afford apt means to carry out a decision to that effect made by other authority. Indeed, § 5065 had its genesis in a public act passed in 1874, which provided that "any county in this state may take land which has been fixed upon by it as a site for a new jail, court house, or other county building," or any addition thereto, and that if the county commissioners of the county wishing to take the land could not agree with the owner, then they might bring condemnation proceedings; Public Acts, 1874, p. 211; and in the Revision of 1875 the act was condensed and the language changed into the form in which it now

appears. Revision of 1875, p. 87. Under the original act the county commissioners were merely designated to carry out the decision made by the county, and it is hardly possible to conceive that by the change of language made in the Revision of 1875 the Legislature intended to vest the county commissioners with the broad powers which it is now contended they have.

Two other provisions of the statutes are significant in this connection. One is that county taxes can only be laid at a meeting of the senators and representatives of the county, with the exception that when a court house or a jail or its appurtenances need repairs which will not cost over $600 and there is not money in the treasury to pay for them, the county commissioners are authorized to apportion the expense among the towns in the county, to be collected in the same manner as county taxes. General Statutes, §§ 212, 214. It thus appears that the county commissioners could never upon their own initiative proceed with the erection of a new county building or court house, but that any such project could only be put into effect when the county meeting had determined that it was advisable to do so. More significant is the provision of § 5425 of the General Statutes, that the county commissioners shall provide suitable quarters and furniture necessary for holding the Superior Court and Court of Common Pleas in their respective counties when there is no suitable place therefor, and the expense thereof, except where it is otherwise provided by law, shall be paid by the county. General Statutes, § 5425. The restricted power given to county commissioners by this statute is evidently designed to meet a situation where suitable quarters for holding the courts mentioned have not been provided in the ordinary way, and it indicates clearly that the county commissioners are not vested with the broad power

of determining at their discretion whether a new county building or court house should be built in the county.

With certain exceptions (see e. g. § 5333 of the General Statutes, Public Acts, 1886, p. 608, 1887, p. 707), the duty of building and maintaining court houses has from the early days been placed upon the counties, as it still is. General Statutes, § 214. In 1667 the counties were directed to erect prisons or houses of correction, and in 1753 this act was amplified to provide that the county courts might assess and tax the inhabitants of the county such sums as it should judge necessary for this purpose. 2 Col. Rec. 61; 10 id. 159. In 1759 the act was amended to provide that if it were found necessary to build a new court or county house or repair an existing one "the civil authority" within the county might lay a tax for this purpose. 11 Col. Rec. 308. In the Revision of 1821 the judges of the county court and justices of the peace in the several counties were given power to tax the inhabitants for building, repairing and furnishing jails as need might require, and it was also provided that whenever it should be necessary to build a new court house or repair any such house the expense should be payable by the inhabitants of the county, the tax to be levied and collected in the same manner as that for building jails. Revision of 1821, p. 250. Neither in these acts nor since has any express authority been vested in any body to determine when a new court house should be erected in the county, but the power to lay a tax for such purpose would seemingly imply a right in the taxing body to determine when such a building should be erected.

Previous to 1824 the power to lay taxes for county purposes was vested at different times in various bodies. In 1712 the county courts and grand jurors

were empowered to levy annual taxes to pay the debts of the county. 5 Col. Rec. 329. As already noted, in 1753 county courts were authorized to lay taxes for the erection by the county of houses of correction; 10 Col. Rec. 159; and in the Revision of 1821 this power was vested in the county courts and justices of the peace in the county; Revision of 1821, p. 250. In 1824 the power to lay county taxes was vested in the judges of the county courts and the representatives to the General Assembly from the towns in the county. Public Acts, 1824, chap. 6. In 1841 the management of county property which had previously vested in the county courts was transferred to county commissioners, the appointment of whom was then first authorized. Public Acts, 1841, p. 15. In 1851 it was provided that whenever in the judgment of the county commissioners in any county it should be necessary to levy a tax upon the inhabitants of the county, they should call a meeting of the representatives to the General Assembly from the towns in the county and that meeting might impose the tax. Public Acts, 1851, p. 66. In 1877 it was first provided that the representatives in the several counties chosen to the General Assembly should have a stated meeting at which they might make specific appropriations for any of the items of county expenditures or for the repairs or alteration of the jails or county houses or court houses and lay a tax upon the towns for any county purpose; Public Acts, 1877, p. 219; and in 1883 it was provided that the senators resident in the county should be members of the county meeting. Public Acts, 1883, p. 256. This law now appears as § 215 of the General Statutes. In 1907 an act was passed, now § 216 of the General Statutes, which provides that the representatives and senators from the county should have authority to meet at any time upon the call of the

county commissioners to consider and examine into the affairs of the county, that upon written request of one-third of the membership the county commissioners should call such a meeting and that if they failed to do so the petitioners therefor might call it; and one of the powers given to this meeting was to "have and exercise a general supervision over the affairs of the county."

As the statutes now stand, the county commissioners are in charge of the property and affairs of the county largely as administrative officers. They must provide accommodation for the courts where there is a deficiency of provision in the ordinary way and may make repairs not costing over $600 to court houses when they deem it needful, apportioning the expense among the towns in the county. On the other hand, there has been a definite progression toward vesting legislative authority as regards county affairs in the county meetings. The county commissioners have never had express authority to determine when a new court house should be erected or to lay taxes which could serve such a purpose. The erection of a county court house is, in the absence of some special statutory provision, a county matter. The power given the county meeting to have and exercise a general supervision over the affairs of the county, coupled with the fact that the county meeting is the sole body which could lay taxes adequate to build a new court house or county building, is adequate statutory authority to that meeting to determine when such a building should be erected. It is not necessary to look to the act authorizing the county of Fairfield to issue bonds for establishing a court house at Stamford to find authority in the county meeting to determine that this should be done, but that authority arises out of the

provisions of the General Statutes to which reference has been made.

The record of the county meeting of August 2d, 1937, does not contain any report of the committee appointed at the earlier meeting to consider the advisability of erecting an addition to the court house at Bridgeport and erecting or purchasing a suitable building at Stamford for sessions of the courts, but the terms of the vote referring to the report as one "recommending the purchasing, alteration and furnishing" of the building at Stamford indicate that an oral report was made to that effect. That the appointment of the committee at the previous meeting was not among the matters to be acted upon mentioned in the call and that its appointment was made before the special law authorizing the issue of bonds was approved, are not matters of consequence, for the meeting of August 2d, 1937, could have acted upon the matter without the report of any committee or upon the report of a committee voluntarily organized or appointed by some person or body without any authority. The vote was in effect that a new court house should be provided as recommended and was a determination of that question by the county meeting. The provision that the county commissioners "be authorized" to finance the proposed building was, when read in the light of the surrounding circumstances, a direction to them to do so. *United States Sugar Equalization Board* v. *P. De Ronde & Co.,* 7 Fed. (2d) 981, 986. Unless, then, there is some defect in the vote passed at the meeting it is the duty of the commissioners to proceed in the matter.

The defendants contend that the provision of § 825d of the 1937 Supplement that there shall be sessions of the Superior Court at Stamford "whenever suitable quarters are provided without expense

to the county" renders nugatory any action for the construction of a court house at the expense of the county. Whether or not the act authorizing the issue of bonds, later adopted, in effect repealed this provision, there is no need to inquire. If the county should see fit to erect a court house in the hope that any deficiency in the authority to hold sessions of the Superior Court in it would be remedied at the next session of the Legislature, it is not easy to understand why it might not do so. But, that aside, Courts of Common Pleas have been authorized to hold sessions at Stamford "if suitable accommodations for holding court shall be there provided." General Statutes, Cum. Sup. 1935, § 1622c. Neither the act providing for the issuance of the bonds nor the vote of the county meeting restricts the use of the building at Stamford to sessions of the Superior Court and it would be well within the power of the county to construct a court house at Stamford for the use of the Court of Common Pleas if it saw fit to do so. The restriction in § 825d upon the holding of sessions of the Superior Court there, even if effective, would not avail to defeat adequate action by the county meeting for the purchase and equipment of a court house at Stamford.

It does not, however, follow that the plaintiffs are entitled to the relief they seek in this action. The act authorizing the county meeting to issue bonds empowered it to issue them "to an amount not exceeding $95,000." The vote directed the county commissioners to provide for financing the project by a bond issue "not exceeding $95,000 as authorized under the laws of the State of Connecticut, and by a tax to be levied to provide the balance of said sum." It can only be interpreted as a direction to the county commissioners to levy a tax to provide for the necessary expenditures, within the limitation set, in excess of such sum as

might be realized by a bond issue. The vote was clearly defective as regards the provision for the tax levy. Under the vote the cost of purchasing, altering and equipping the building might not exceed $132,500; the commissioners were directed to raise funds by a bond issue "not exceeding $95,000"; necessarily this left entirely indefinite the amount of the balance to be raised by a tax and in effect purported to give the county commissioners power to determine that amount. The county meeting alone has authority to "impose" a county tax, at least if it exceeds $600. General Statutes, §§ 212, 214. It is necessarily inherent in the exercise of that authority that the meeting should fix or render definitely determinable the amount of the tax to be levied. *People ex rel. Carr* v. *Pittsburgh, C., C. & St. L. Ry. Co.,* 316 Ill. 410, 413, 147 N. E. 492; *State ex rel. M. F. D. Relief Assn.* v. *City Council,* 161 Minn. 103, 105, 200 N. W. 932; *Morton, Bliss & Co.* v. *Comptroller General,* 4 S. C. 430, 454; 3 Cooley, Taxation (4th Ed.) § 1031. That function the meeting could not delegate to the county commissioners. *Robinson* v. *Dodge,* 18 Johns. (N. Y.) 351; *State* v. *Sickles,* 24 N. J. L. 125; *Shepardson* v. *Gillette,* 133 Ind. 125, 31 N. E. 788; *People ex rel. Carr* v. *Pittsburgh, C., C. & St. L. Ry. Co.,* supra; *St. Louis & S. F. Ry. Co.* v. *Apperson,* 97 Mo. 300, 306, 10 S. W. 498; 1 Cooley, Op. Cit., § 82; 4 Dillon, Municipal Corporations (5th Ed.) § 1383. It necessarily follows that the vote did not legally impose any tax upon the towns, and in this respect it was void.

The terms of the vote make it clear that the entire project of purchasing, altering and equipping the building was regarded by the county meeting as a unit and it is not possible to sever the illegal provision as to the raising of money for the purpose by taxation

and so sustain the rest of the vote. *State* v. *Wheeler,* 25 Conn. 290, 299; *Hoxie* v. *New York, N. H. & H. R. Co.,* 82 Conn. 352, 372, 73 Atl. 754; *Beach* v. *Bradstreet,* 85 Conn. 344, 352, 82 Atl. 1030; *State* v. *Kievman,* 116 Conn. 458, 471, 165 Atl. 601; 1 Lewis' Sutherland, Statutory Construction (2d Ed.) § 297. It therefore follows that no sufficient legal action was taken by the meeting to put into effect its determination that a court house should be built at Stamford and no duty was imposed upon the county commissioners to proceed with the project. While we cannot agree with the trial court as regards the basis upon which it reached its conclusion, the only decision which could properly be rendered was that which it made, for the defendants.

The defendants claim that the vote was also defective in that it authorized the county commissioners to determine the amount of the bond issue provided it did not exceed $95,000. It is not necessary to determine this question in view of the decision we have reached, but we suggest that it is one which, were we confronted with it, would merit serious consideration. We also note that while a commission was appointed to "supervise" the alterations in the building, no express authority was conferred upon the commissioners or anyone else to purchase the building or to contract for its alteration and equipment. While the provision of § 201 of the General Statutes that the county commissioners "may . . . purchase real estate in the name and behalf of the county" might give them authority to make the purchase, it would seem desirable, if not necessary, that specific provision be made directing them to do this, as well as to contract for the supplies and labor needed for the alteration and furnishing of the building, with a more definite provision as to the

functions with reference to. the alterations which the commission is to perform.

There is no error.

In this opinion the other judges concurred.