## City of New London et al. *v.* County of New London et al.

Baldwin, C. J., King, Murphy, Shea and Bordon, Js.

Argued May 9—decided July 25, 1961

*Alfred M. Bingham,* for the appellant (defendant New London County Agricultural Extension Council, Inc.).

*Edmund J. Eshenfelder,* with whom was *Robert W. Marrion,* for the appellee (named plaintiff); with him, on the brief, were *Orrin Carashick,* for the appellee (plaintiff city of Norwich), *Edmund W. O'Brien,* for the appellees (plaintiffs town of Waterford and town of Old Lyme), and *J. Rodney Smith,* for the appellee (plaintiff town of Groton).

*Carl D. Eisenman,* assistant attorney general, appeared for the defendant state of Connecticut.

SHEA, J. In this action, the plaintiffs seek a declaratory judgment determining the validity of a vote passed by the state representatives and state senators from New London County at a meeting held on July 27, 1960. The vote appropriated all

available surplus funds of the county as of September 30, 1960. The plaintiffs also requested injunctive relief. On September 16, 1960, on written stipulation of the parties, a temporary injunction was issued by a judge of the Superior Court restraining the officers and agents of the county from disbursing any of its surplus funds, and it was ordered that all such funds be deposited with the clerk of the Superior Court, to be held by him pending the ultimate disposition of this action. The New London County Agricultural Extension Council, Inc., hereinafter called the council, was, on its motion, joined as a codefendant and thereafter filed a counterclaim alleging that, by virtue of the vote of July 27, 1960, the council was entitled to receive the surplus funds, and requesting, by way of relief, an order directing the payment to it of those funds. Subsequently, the state of Connecticut, as statutory successor to the county, was ordered by the court to be added as a party defendant. See General Statutes § 6-2a. The court rendered judgment declaring that the vote of July 27, 1960, was not a legal and valid appropriation authorizing the payment of any county funds by the defendant county commissioners to the council; that the council was not entitled to receive the available surplus funds of the county as of September 30, 1960; and that those funds vested in the state of Connecticut on October 1, 1960. The clerk of the Superior Court was directed to pay over the funds to the state treasurer, to be disbursed as required by § 6-2a. The council has appealed from the judgment.

In the early summer of 1960, the officers and agents of the county were aware of the law which would bring an end to county government on October 1, 1960. The commissioners, the state sena-

tors resident in the county, and the representatives to the General Assembly from all the towns in the county were concerned about the use of the funds which would be available over and above current needs. After several meetings, at which various projects were discussed, the commissioners called a special meeting of the senators and representatives for July 27, 1960, to consider the return to the individual towns in the county of an anticipated surplus as of the end of September, 1960, and to consider a list of proposals concerning the expenditure of funds, including a proposal labeled "Building for County Extension Service, $40,000." At the meeting of July 27, the senators and representatives voted "that all available surplus funds of New London County as of September 30, 1960 be appropriated for the New London County Agricultural Service for the construction of a service center, . . . that the County Commissioners take the necessary legal action to carry out this motion . . . [and] that construction of the building (the service center) must be started within two years or the money be returned to the towns of the County." When this vote was taken, it was assumed that the surplus funds of the county on September 30, 1960, would amount to approximately $45,000. The audit of county funds as of September 30, 1960, showed an actual surplus of $51,034.68 available for appropriation.

The agricultural extension service in each county is an educational program operated under federal and state law to provide "instruction and practical demonstrations in agriculture and home economics." 38 Stat. 373, § 2, as amended, 7 U.S.C. § 342; General Statutes § 22-11. The program is a co-operative undertaking of the United States department of

agriculture and the state agricultural colleges, including the college of agriculture of the University of Connecticut. It is financed with federal and state funds, supplemented, until October 1, 1960, by county funds and individual contributions. Under § 22-11 of the General Statutes, state and county funds for the extension service are payable to a sponsoring organization in each county, when that organization is certified by the University of Connecticut. The council is a private corporation without capital stock and was organized in 1958 under the laws of this state solely for the purpose of promoting cooperative agricultural extension work in New London County. It has been designated and certified by the University of Connecticut, under § 22-11, to receive certain state and county funds for the promotion of agricultural interests. The annual county budgets for the fiscal years ending September 30, 1959, and September 30, 1960, contained appropriations for the county agricultural extension service. These items were for current expenses and were paid by the county treasurer to the council as "sponsor." The council does not own any land, and it has no plans for the location, design or erection of any building. The agents and staff of the extension service are appointed by the University of Connecticut on recommendation of the council. On July 27, 1960, the agents and staff of the service carried on their activities in three rooms in the post office building in Norwich. The senators and representatives had been told that these facilities were inadequate. Nothing was done by the county commissioners to carry out the vote of July 27, 1960.

The trial court concluded: (1) The vote was an attempt to dispose of county assets in contravention of § 6-2a of the General Statutes; (2) it did

not appropriate a specific sum; (3) it was not for a purpose authorized by law; (4) it was not for a public, as distinguished from a private, purpose; (5) the persons who were to own and control the service center were indefinite.

County government in Connecticut came to an end on October 1, 1960. On and after that date all property of any kind belonging to the several counties of the state and all the powers and authority of those counties vested in the state. General Statutes § 6-2a. All liquid assets in county funds remaining after deduction of current liabilities, with the exception of bonded indebtedness and the interest thereon, were to be rebated proportionately to the contributing towns. Ibid. Under § 6-28b, the county commissioners were required to file, on or before September 30, 1960, a final statement of the financial affairs of the county. Effective October 1, 1960, all the statutes relating to county officers, appropriations and taxes were repealed. Until that date, a county had broad powers, similar in many respects to those generally exercised by municipal corporations. *General Hospital Society* v. *New Haven County,* 127 Conn. 53, 57, 14 A.2d 746. Legislative authority over county affairs in each county had been conferred on a county meeting of the representatives elected to the General Assembly in the county and the state senators resident in it, while county commissioners acted as administrative officers. General Statutes §§ 6-3 to 6-28; *State ex rel. Madigan* v. *County Commissioners,* 124 Conn. 611, 620, 1 A.2d 347. The county meeting had authority to appropriate money either at the annual budget meeting or at a meeting held, when the commissioners considered it necessary, to make additional appropriations. §§ 6-18, 6-25.

In accordance with § 22-11, the county commissioners were authorized to make certain specified payments from county funds to the council, since it had been certified by the university as the sponsoring organization in the county. Section 22-11 also provided that any county, at a meeting of its senators and representatives held for the purpose, could make an additional appropriation for the purposes of the sponsoring organization. The vote of July 27, 1960, to appropriate all available surplus funds of New London County as of September 30, 1960, was clearly authorized by the statute. The meeting of the senators and representatives had been called for the specific purpose of considering proposals which included the disposition of an estimated surplus as of the end of September and an appropriation for a building for the county extension service. The vote unquestionably came within the purposes stated in the call for the meeting, and § 22-11 empowered the legislators to make the appropriation. Furthermore, § 6-25 gave the legislators specific authority to make the appropriation from the accumulated surplus of county funds. The vote was not adopted in violation of § 6-23, which required all county appropriations to be for a specific sum. While the precise amount was not, and could not be, fixed at the time of the vote, that sum could be ascertained with exactitude as of the close of business on September 30, when the appropriation was to become effective. The county meeting had a right to anticipate the accumulation of surplus funds as of the date when the business of the county terminated by operation of law, and possessed the power to dispose of all of the surplus as it did. § 6-25. The vote was sufficiently specific to satisfy the statute. *Woodward* v. *Reynolds,* 58 Conn. 486,

490, 19 A. 511; *Riley* v. *Johnson,* 219 Cal. 513, 520, 27 P.2d 760; *Wells* v. *Childers,* 196 Okla. 339, 341, 165 P.2d 358.

The plaintiffs also claim that the appropriation "for the New London County Agricultural Service for the construction of a service center" was not for a public purpose. Payments for the promotion of agricultural interests have been authorized under § 22-11 and its predecessors since 1915. Public Acts 1915, c. 335. They are, and have always been regarded as, payments for a public purpose. Another claim of the plaintiffs is that the appropriation was fatally indefinite since it did not indicate to whom the funds were to be paid. The council concedes that the vote did not name it as the payee of the appropriation but correctly maintains that, having been certified by the university under the statute, it has authority to receive and accept the surplus funds voted by the county. Moreover, it is quite significant that previous appropriations by the county meeting for the extension service have been paid to the council without any question.

The object of the vote was clearly stated. No one can doubt the intention of the legislators. Their purpose was to turn over all of the available surplus funds of the county for the construction of a service center for the extension service. This was a legal appropriation for a specified purpose. Upon the determination of the actual surplus, the commissioners were authorized to transfer it to the council, a corporation authorized by law to receive such funds for the use of the extension service. The council, in accepting the surplus, does so subject to the requirement and obligation that the money shall be used for the purpose stated in the appropriation, namely, the building of a service center for the New

London County agricultural extension service. If the council fails to start the building of a service center within two years, the money must be returned to the towns of the county. While the vote is not explicit as to the time when the two years shall begin to run, the law would naturally presume an intention to have this time begin to run from September 30, 1960, the effective date of the appropriation.

Finally, the appropriation was not in contravention of the provisions of § 6-2a. While the action of the legislators may have been in circumvention of the statute, it cannot be interpreted as contrary to it. Section 6-2a did not become effective until October 1, 1960. Before that time, the county meeting had supervision of the affairs of the county and could appropriate money for any purpose authorized by law.

In effect, therefore, the council, by this appropriation, is entitled to all of the surplus funds of New London County available as of September 30, 1960. In accepting those funds, however, the council acts as a trustee charged with the responsibility of using them for the construction of a service center for the New London County agricultural extension service. The construction of this building must be commenced within two years from September 30, 1960, and, if it is not commenced, the council is legally bound to pay the money received under the vote of July 27, 1960, to the state treasurer to be rebated to the towns in the county in accordance with § 6-2a.

There is error, the judgment is set aside and the case is remanded with direction to render judgment in accordance with this opinion.

In this opinion BALDWIN, C. J., KING and BORDON, Js., concurred; MURPHY, J., dissented.